Dear Mr. Lafser:
This letter, and the attached Memorandum Opinion prepared by my assistant, Dan Summers, which I approve, constitute the Attorney General's statement required by 40 CFR 123.125 as part of the Application for Interim Authorization submitted to the U.S. Environmental Protection Agency by the Missouri Department of Natural Resources pursuant to 40 CFR Part 123, Subpart F. In my opinion the laws of the State of Missouri, as discussed in the attached Memorandum Opinion, provide adequate authority to carry out the state's program for the regulation of hazardous waste, as set forth in the state's Application for Interim Authorization respecting Phase I and Phase II, Components A and B, of the federal program. The enabling legislation for the state's program was in existence prior to the July 26, 1982 announcement of the final component of the federal program. The authorities discussed in the attached Memorandum Opinion are contained in statutes and regulations lawfully adopted and in force prior to the date of this letter, except that amendments to certain Air Conservation Commission regulations, necessary to the effectiveness of the Hazardous Waste Management Commission's particulate emission limitation for incinerators, will not be in effect until May 12, 1983. In my opinion the Authorization Plan submitted as part of the state's Application will, if carried out, provide the State of Missouri with the authority to meet the requirements for final authorization under Phase I and Phase II, Components A and B, of the federal hazardous waste program, based on current federal regulations.
Sincerely,
 JOHN ASHCROFT Attorney General
 MEMORANDUM OPINION
TO: John Ashcroft, Attorney General
FROM: Dan Summers, Assistant Attorney General
DATE: January 31, 1983
RE: Opinion Request No. 41
The Director of the Department of Natural Resources has asked this office to provide our opinion whether the state program for the regulation of the generation, transportation, storage, treatment and disposal of hazardous wastes under §§ 260.350
to 260.430, RSMo, and the Hazardous Waste Management Commission regulations adopted under that law, are equivalent to the regulatory program developed by the federal Environmental Protection Agency (EPA) pursuant to the Resource Conservation and Recovery Act, PL 94-580, as amended by PL 96-482 (RCRA). Our opinion is required under 40 CFR 123.125, as part of Missouri's application for interim authorization under RCRA to administer the federal program for regulation of hazardous wastes. See 42 USCA § 6926(c) and 40 CFR Part 123, Subpart F.
Interim authorization has been divided by EPA into four parts, denominated as Phase I, and Phase II, Components A, B and C. Phase I refers to the identification and listing of hazardous wastes, regulation of the generation and transportation of those wastes, and the regulation of treatment, storage and disposal facilities under interim status regulations found at40 CFR Part 265. Phase I does not require the issuance of permits to hazardous waste management facilities. Phase II involves the issuance of permits to treatment, storage and disposal facilities pursuant to standards at 40 CFR Part 264. Phase II, Component A, refers to storage facilities using containers or tanks, and facilities treating wastes in tanks. Phase II, Component B, refers to treatment of wastes in incinerators. Phase II, Component C, refers to storage, treatment or disposal of wastes in surface impoundments, waste piles, landfills, and land treatment units. Missouri is currently applying for interim authorization for Phase I and Phase II, Components A and B, but not for Component C. Therefore, our opinion does not address the federal standards applicable in the process of permitting Component C facilities.
This memorandum was developed in the format requested by EPA. Each of the statements appearing as a part or subpart heading is found in the EPA format furnished us. A few minor changes have been made in these statements for the purpose of clarity, due to the fact that EPA realigned the grouping of facilities within the various components of Phase II after the format was furnished to us. Parts I through VIII of this memorandum deal with Phase I of the federal program, whereas Parts IX through XI deal with Phase II, Components A and B.
PREFATORY NOTE AS TO DATE OF ENABLING LEGISLATION
The State of Missouri undertook to regulate the generation, transportation, treatment, storage and disposal of hazardous waste in §§ 260.350 to 260.430, RSMo 1978, the Missouri Hazardous Waste Management Law. The law was adopted in H.B. 318, 79th General Assembly, and became effective September 28, 1977. The 1977 Act provides the enabling legislation for the State of Missouri to carry out the hazardous waste management program discussed in detail throughout this memorandum.
In 1980, the Missouri Legislature adopted H.B. 5, 6 and 4, 80th General Assembly, Second Extraordinary Session. H.B. 5, 6 and 4 amended every section of the Missouri Hazardous Waste Management Law except §§ 260.350, 260.355, 260.385, and 260.410. The legislature also added three new sections, 260.372, 260.377, and 260.391. H.B. 5, 6 and 4 became effective on October 31, 1980. Thus, all state enabling legislation was in place well before the July 26, 1982 announcement of the final component of Phase II of the federal program, as required by 40 CFR 123.125(a) and 123.128(d).
In the format of this opinion we are asked by EPA to make a specific citation in each part or subpart to state laws discussed under that part. For the sake of brevity, all citations to Chapter 260, Revised Statutes of Missouri, will be made without reference to whether the statute appears in RSMo 1978, or in H.B. 5, 6 and 4, which is found in RSMo Supp. 1982. It should be understood throughout that §§ 260.350, 260.355, 260.385 and 260.410
are to be found in RSMo 1978, and §§ 260.360 to 260.380, 260.390
to 260.400, and 260.415 to 260.430 are to be found in RSMo Supp. 1982.
I. IDENTIFICATION AND LISTING
RCRA § 3001(b), 42 U.S.C. § 6921
 State statutes and regulations provide control over a universe of hazardous waste generated, transported, treated, stored and disposed of in the state at the time of program approval which is nearly identical to that which would be controlled by the federal program under 40 CFR 261. (See 40 CFR 123.128(a)).
Citation of Laws and Regulations
 Sections 260.355, 260.360, and 260.370; 10 CSR 25-4.010 and 5.010
Explanation of Legal Authority
A. Definition of Hazardous Waste.
The term "hazardous waste" is defined in § 260.360(9). Comparison of this definition to the definition of the same term in § 1004(5) of the Resource Conservation and Recovery Act (RCRA), as amended, reveals that the state definition parallels the federal definition, both in terms of the characteristics of the waste, and in terms of the injurious effects which may result. The federal definition references "solid waste", but the definition of this term in § 1004(27) of RCRA makes it clear that semisolid, liquid and contained gaseous materials are also covered under the federal program. Coverage of the federal program extends to all "discarded" materials in whatever form, with the exceptions set out in § 1004(27). The state definition of "hazardous waste" does not refer to solid waste. Instead, the term "any waste or combination of wastes" is used. Section 260.360(9). "Waste" is defined in § 260.360(17) as "any material for which no use or sale is intended and which will be discarded, or any material which has been or is being discarded." Waste also includes residual materials which may be sold for energy production or for reclamation, reuse or transformation into new products. We believe that the term "waste", as used in the Missouri statute, has a coverage at least as broad as that of the term "solid waste" as used in RCRA. Therefore, the Missouri definition of hazardous waste is equivalent to the federal definition of the same term.
B. Determining Hazardous Waste by Characteristics.
Sections 260.360(9) and 260.370.3(1)(a) provide the Missouri Hazardous Waste Management Commission with specific authority to adopt regulations setting forth criteria for determining whether any waste or combination of wastes is hazardous. The latter subparagraph requires that such criteria take into account "toxicity, persistence and degradability in nature, potential for accumulation in tissue, and other related factors such as flammability, corrosiveness and other hazardous characteristics." Section 260.370.3(1)(a). These standards are identical to the standards set forth in § 3001(a) of RCRA, which authorizes EPA to establish criteria for the same purpose under the federal program.
Pursuant to § 260.370.3(1)(a), the Commission has adopted regulations setting forth criteria for determining whether a waste is hazardous. Sections (2), (3), (4) and (5) of regulation10 CSR 25-4.010 set forth characteristics for ignitable, corrosive, reactive and toxic wastes, and establish testing and measurement standards to determine whether a waste possesses one or more of these characteristics, and is therefore hazardous.10 CSR 25-4.010(2)-(5) are derived from 40 CFR 261.21 (ignitability),261.22 (corrositivity), 261.23 (reactivity), and 261.24 (EP toxicity), and are substantially identical to the federal regulations. In addition, as in 40 CFR 261.10, section (1) of10 CSR 25-4.010 places the primary responsibility upon generators to assess their waste in accordance with the identified characteristics and test and measurement methods. And as with 40 CFR 261.21
to 261.24, 10 CSR 25-4.010(2)-(5) assigns EPA hazardous waste numbers to wastes meeting these specified characteristics but not found on a hazardous waste list. Missouri's system of identifying hazardous waste by characteristics is substantially identical to that of the federal program.
C. Determining Hazardous Waste by Reference to Published Lists
Section 260.370.3(1)(a), in addition to authorizing the Commission to adopt regulations setting criteria or characteristics for determining if a waste is hazardous, specifically authorizes the adoption of lists of hazardous wastes, by regulation. The Commission has adopted such lists in 10 CSR 25-4.010(6). Under 10 CSR 25-4.010(1)(B), a person who generates waste found in one of the lists is deemed to be a generator of hazardous waste, unless that person shows that his waste is not hazardous pursuant to the procedures in section (7) of the regulation. These procedures will be discussed later in this subpart.
The hazardous waste lists contained in 10 CSR 25-4.010(6) are as follows: subsections (G) "Hazardous waste from nonspecific sources", (H) "Hazardous waste from specific sources", (I) "Discarded Commercial Chemical Products, Off-Specification Species, Containers, and Spill Residues Thereof", (J) "Missouri supplemental hazardous waste from nonspecific sources", (K) "Missouri Supplemental Hazardous Waste from Specific Sources" and (L) "[Missouri] Discarded Commercial Chemical Products or Byproducts, Off-Specification Species, Containers, and Spill Residues Thereof". Subsections (G), (H), and (I) are identical to the EPA lists contained in 40 CFR 261.31, 261.32 and 261.33. Each waste is preceded by a hazardous waste number which corresponds to the EPA identification number.
Subsections (J), (K) and (L) of 10 CSR 25-4.010(6) contain lists of wastes which EPA originally proposed to list as hazardous, but which have not been so designated. However, the wastes on the Missouri supplemental lists are regulated as hazardous under the Missouri program. The greater coverage of the Missouri hazardous waste lists is not a ground for denying authorization of the state program. 40 CFR 123.1(k).
As noted above, listing of a waste in one of the lists in10 CSR 25-4.010(6) creates a presumption that the waste is hazardous. 10 CSR 25-4.010(1)(B) allows a generator to seek a determination that the waste produced at his facility is not hazardous, and therefore not subject to regulation under the state program (referred to as "delisting"). The standards and procedures for requesting delisting and determining whether delisting is appropriate are set forth in section (7) of10 CSR 25-4.010. That section requires the generator to show to the satisfaction of the Director of the Department of Natural Resources that the waste produced at the particular facility does not possess any of the characteristics for which it was listed. The standards set forth in 10 CSR 25-4.010(7) for obtaining a delisting are the same as those found in 40 CFR 260.22.
D. Exclusions.
Section 260.355 sets forth in five subdivisions five categories of waste which are exempted from the regulatory program under the Missouri Hazardous Waste Management Law. Subdivision (1) exempts "[r]adioactive wastes regulated by laws of the federal government or of this state." Section 1004(27) of RCRA and 40 CFR 261.4(a)(4) exclude from coverage under the federal program "source, special nuclear or by-product materials as defined by the Atomic Energy Act of 1954, as amended." Missouri does regulate radioactive materials under §§ 192.400 to192.490, RSMo 1978, and rules adopted by the Division of Health in 13 CSR 50-90. However, EPA has not adopted rules subjecting to regulation under RCRA those radioactive wastes which are not regulated under the Atomic Energy Act. Therefore, the exemption in § 260.355(1) does not exclude from coverage any waste covered under the federal program.
Subdivision (2) of § 260.355 exempts "[e]missions to the air subject to regulation of and which are regulated by the Missouri air conservation commission pursuant to chapter 203, RSMo." We read this to be a narrow exemption, applying only to those waste constituents which are being emitted to the air, and which are actually subject to an emission limitation under Air Conservation Commission regulations. Whether this exclusion has any effect on the equivalency of Hazardous Waste Management Commission regulations with RCRA regulations depends on whether emissions to the air are regulated under RCRA regulations, and whether those emissions are regulated by the Air Conservation Commission.
To date EPA has chosen to regulate emissions of hazardous wastes to the air in two contexts. Part 264 and Part 265 regulations require that wind dispersal of particulate emissions from waste piles, landfills and land treatment facilities be "controlled." These are what are commonly known as fugitive dust regulations. Subpart O of Part 264 places emission limitations on incinerators for principal organic hazardous constituents (POHCs), hydrogen chloride, and particulate matter (§ 264.343), carbon monoxide (§ 264.345(b)(1)), and fugitive emissions from the combustion zone (§ 264.345(d)).
The present Air Conservation Commission regulations address some of the air emissions regulated under the federal program. Fugitive dust is regulated under 10 CSR 10-2.050, 10 CSR 10-3.070,10 CSR 10-4.050, and 10 CSR 10-5.100. Particulate emissions from incinerators are regulated under 10 CSR 10-2.090,10 CSR 10-3.040, 10 CSR 10-4.080, and 10 CSR 10-5.080. No Air Conservation Commission regulations apply to POHCs, hydrogen chloride or carbon monoxide emissions from incinerators, or to fugitive emissions from incinerator combustion chambers.
So that the Hazardous Waste Management Commission may regulate particulate emissions from incinerators, the Air Conservation Commission is proposing to amend its incinerator regulations, to exclude hazardous waste incinerators from the particulate emission limitations contained in 10 CSR 10-2.090, 10 CSR 10-3.040,10 CSR 10-4.080 and 10 CSR 10-5.080. The proposed changes were published in the January, 1983 Missouri Register, and are set forth in an appendix to the state's Application for Interim Authorization. A hearing on the proposed regulation changes is scheduled for February 23, 1983. We understand that the Department's plan is that the changes will be adopted by the Air Conservation Commission at its March 23, 1983 meeting, for publication in the May 2, 1983 Missouri Register. On that schedule the changes will become effective on May 12, 1983, pursuant to § 536.021.5(2), RSMo 1978. Once those changes to the Air Conservation Commission regulations are in effect, § 260.355(2) will present no impediment to enforcement of Hazardous Waste Management Commission regulations respecting particulate emissions from incinerators.
Respecting fugitive emissions from waste piles, landfills and land treatment units, the Department has chosen for the present to regulate those emissions under the existing Air Conservation Commission fugitive dust regulations. Those regulations, found in an appendix to the Application for Interim Authorization, in general place three types of limitations on emissions of fugitive dust. First, they prohibit source operators from allowing particulate matter to become airborne in such quantities that it is visible in the air beyond the boundaries of the premises where it originates, or allowing particles greater than 40 microns in size to go beyond the premises boundaries. Second, the regulations prohibit persons from constructing or using buildings and appurtenances, roadways and open areas without applying all reasonable measures required to prevent particulate matter from remaining visible or being found beyond the premises where it originates. Third, ambient air concentration limitations are established for inhabited places.
The federal regulations on the subject are not as specific.40 CFR 265.251, applicable to waste piles, requires piles to be "covered or otherwise managed so that wind dispersal is controlled."40 CFR 265.272(e), applicable to land treatment units, requires the operators to "manage the unit to control wind dispersal."40 CFR 265.302(d), applicable to landfills, contains language identical to 40 CFR 265.251. The federal regulations do not say whether "control" means to prevent, or to lessen to some degree. No objective standard is provided. For that reason, we must conclude that the Air Conservation Commission regulations, which do provide objective criteria or limitations, are not just substantially equivalent to the federal provisions, but indeed provide greater protection to human health and the environment. No comparison to the fugitive dust regulations in Part 264 of the federal regulations is necessary, as the state is not at this time applying for authorization to issue RCRA permits for waste piles, landfills and land treatment units.
Subdivision (3) of § 260.355 excludes "[d]ischarges to the waters of this state pursuant to a permit issued by the Missouri clean water commission pursuant to chapter 204, RSMo." We interpret this exclusion to be limited to the discharge from a facility itself, and not to apply to the activities and processes which take place at the facility prior to the actual discharge. The federal program takes the same approach with regard to industrial wastewater facilities. 40 CFR 261.4(a) (2). Further, § 260.395.13(2) provides that permits are not required for municipal wastewater treatment plants which are permitted by the Clean Water Commission. Section 260.395.13 goes on to provide that the treatment plants must comply with § 260.390(3)-(7), pertaining to manifest, record keeping and reporting requirements.
The Hazardous Waste Management Commission has clarified these exclusions in 10 CSR 25-7.011(1)(B). That subsection provides for an exclusion from permitting for two categories of sources: (1) publicly owned treatment works (POTWs), so long as the facility possesses an operating permit pursuant to § 204.051, RSMo 1978, and is in compliance with that permit, all federal, state, and local pretreatment requirements are met, and the operator obtains a department identification number and complies with specified manifest, record keeping and reporting requirements; and (2) elementary neutralization units and wastewater treatment units, if the operator complies with the standards of proposed 40 CFR Part 266, Subpart B, as published in the November 17, 1980 Federal Register. The latter exclusion is subject to revocation, and permitting may be required, if certain specified conditions exist. The corresponding exclusions in the federal program are found in 40 CFR 261.4(a)(1), 264.1(e) and (g)(6), 265.1(c)(3) and (c)(10), and 122.26(c).
40 CFR 261.4(a)(1) excludes from the definition of solid waste any domestic sewage, and any mixture of domestic sewage and other wastes, coming to a POTW via sewers. Thus, under the federal program hazardous waste can be introduced into public sewers without coming under RCRA regulation. It appears that implicit in 40 CFR 261.4(a)(1) is the assumption that those wastes will be subject to pretreatment requirements under Section 307(b) of the federal Clean Water Act. Compliance with pretreatment requirements is expressly required in 10 CSR 25-7.011
(1)(B)1. Thus, as to wastes introduced into public sewers,10 CSR 25-7.011(1)(B)1 is consistent with 40 CFR 261.4(a)(1).
As to wastes delivered to a POTW by means other than sewers, the federal program has only a limited application. POTWs are wholly exempt from the Part 265 standards, 40 CFR 265.1(c)(3).40 CFR 122.26(c) provides for a permit by rule for POTWs, as long as the owner or operator has an NPDES permit, is in compliance with the conditions of the NPDES permit, meets pretreatment standards, and complies with certain Part 264 requirements.40 CFR 264.1(e) exempts POTWs from Part 264 standards, except as provided in the permit by rule provisions. Under 10 CSR 25-7.011(1)(B)1, POTWs receiving wastes by means other than sewers are treated in the same fashion. Pretreatment standards must be met. An identification number must be obtained. The manifest, reporting and record keeping requirements found in the state's equivalents to 40 CFR 264.71, 264.72, 264.73(a) and (b)(1),264.75 and 264.76 must be met, as required by 40 CFR 122.26(c)(3). The facility must have and be in compliance with an operating permit issued pursuant to § 204.051, RSMo 1978. This is an NPDES permit, as Missouri has been delegated NPDES authority.39 F.R. 40067 (November 13, 1974). Therefore, 10 CSR 25-7.011
(1)(B)1 is equivalent to 40 CFR 122.26(c) and 40 CFR 264.1(e).
As to waste managed at non-public wastewater treatment facilities and elementary neutralization units, the federal program is in a state of flux. By rulemaking published at45 F.R. 76075 (November 17, 1980), EPA has wholly exempted such facilities from RCRA regulation. Thus, the state program is currently more stringent than the federal program in regard to such facilities, as 10 CSR 25-7.011(1)(B)2 requires compliance with the proposed Part 266 standards. We are cognizant of the fact that EPA in the November 17, 1980 Federal Register announced that those exemptions were intended to be temporary, and on the same day proposed new regulations which, while not wholly exempting privately operated wastewater treatment facilities, would apply the less stringent Part 266 requirements to those facilities. We believe it unnecessary to compare the state regulations with the November 17, 1980 proposal, because the proposed federal regulations are clearly subject to change before promulgation. However, we note that, in addition to incorporating proposed Part 266 standards by reference, 10 CSR 25-7.011(1)(B)2 is substantially identical to the November 17, 1980 version of proposed40 CFR 122.26(d).
Subdivision (4) of § 260.355 exempts "[f]luids injected or returned into subsurface formations in connection with oil or gas operations regulated by the Missouri oil and gas council pursuant to chapter 259, RSMo." The corresponding federal exclusion is found in 40 CFR 261.4(b)(5), which exempts "drilling fluids, produced waters, and other wastes associated with the exploration, development, or production of crude oil, natural gas or geothermal energy." There is no mention in the Missouri statute or regulations of an exemption for geothermal energy. We are informed that "fluids injected or returned into subsurface formations" is factually synonymous with "drilling fluids, produced waters, and other wastes." Therefore, the exclusion in § 260.355(4) is equivalent to the federal exclusion in 40 CFR 261.4(b)(5).
Subdivision (5) of § 260.355 exempts "[m]ining wastes used in reclamation of mined lands pursuant to a permit issued by the Missouri land reclamation commission pursuant to chapter 444, RSMo." Regulated by the Land Reclamation Commission are the surface mining of coal, §§ 444.800 to 444.970, RSMo, barite and certain small coal operations, §§ 444.500 to 444.755, RSMo, and clay, limestone, sand and gravel, §§ 444.760 to 444.786, RSMo. The corresponding federal exclusion is found in 40 CFR 261.4(b)(6), which covers all wastes from the extraction, benefication and processing of ores and minerals (including coal). We read40 CFR 261.4(b)(6) to include within its terms coal, barite, clay, sand and gravel, as well as other minerals and ores not regulated under Chapter 444, RSMo. Therefore, the exception in § 260.355(5) is actually narrower than the exclusion in 40 CFR 261.4(b)(6). We also note 40 CFR 261.4(b)(3), which excludes mining overburden returned to the mine site. We believe that the limitation of the scope of § 260.355(5) to those wastes used in the reclamation of mined land makes that subdivision factually identical to the federal exclusion, as any overburden returned to the mine site would be used in the reclamation of the mined land. Therefore, § 260.355(5) and 40 CFR 261.4(b)(3) are equivalent.
Section 260.380.2 exempts individual householders and farmers who generate only small quantities of hazardous waste, and any person the Commission determines generates only small quantities of hazardous waste on an infrequent basis, from the duties otherwise imposed on generators. This exemption is subject to the proviso that those exempted "shall manage all hazardous wastes they may generate in a manner so as to not adversely affect the health of humans, or pose a threat to the environment, or create a public nuisance; . . ." Section 260.380.2(1). It should be initially noted that § 260.380.2 exempts only small quantities, not all waste generated by farmers, householders and others. It is within the power of the Commission, acting pursuant to § 260.370.3(1), to adopt regulations defining the scope of small quantity exemption. Therefore, § 260.380.2 provides only a limited exemption.
As to farmers generating small quantities of waste, the state and federal exclusions are identical. The Commission has adopted in 10 CSR 25-5.010(11) the same exclusion as is found in40 CFR 262.51, with respect to the disposal of waste pesticides from a farmer's own use. The exemption in 10 CSR 25-4.010(6)(E)4, relating to the waste generated from the growing and harvesting of crops, or from raising farm animals, and returned to the soil as fertilizer, is identical to the exclusion in 40 CFR 261.4(b)(2). As to any other hazardous waste that a farmer might generate, he would be subject to the same regulation as any other generator, with the same small quantity exemptions available to the farmer as are available to any other generator.
As to householders, EPA provides an exclusion in40 CFR 261.4(b)(1). We read this paragraph to exclude all wastes generated from households, hotels and motels, regardless of quantity. Therefore, the exclusion in 40 CFR 261.4(b)(1) is potentially broader than the householders exemption in § 260.380.2. The state regulations do not contain an exemption specific to householders. Instead, householders are subject to the same small quantity exemptions as are other generators.
Pursuant to §§ 260.380.2 and 260.370.3(1), the Commission has adopted small quantity exemptions in 10 CSR 25-4.010(6)(D). We have carefully compared these regulations with 40 CFR 261.5, the federal small quantity exclusion, and find the two to be substantially equivalent. 10 CSR 25-4.010(6)(D)1 provides a small quantity exemption for generators of less than 100 kilograms of hazardous waste in a calendar month. 40 CFR 261.5(a) provides the same exemption for those generating 1,000 kilograms of hazardous waste in any month. 10 CSR 25-4.010(6)(D)2 provides that the accumulation of greater than 100 kilograms of hazardous waste, even if the generator would be exempt under paragraph (D)1, subjects the waste to full regulation under the state program. This is consistent with 40 CFR 261.5(f), to the same effect with regard to the 1,000 kilogram federal exclusion.
10 CSR 25-4.010(6)(D)3 provides a different small quantity exemption for acutely hazardous wastes. It provides that if a person either generates in a calendar month or accumulates at any one time hazardous wastes in the quantities specified in subsections (6)(I) or (6)(L) of 10 CSR 25-4.010, those wastes will be subject to full regulation. This implies that generation in one calendar month or accumulation at any one time of quantities less than specified in (6)(I) or (6)(L) is subject to the special provisions of subsection (6)(D). Subsection (6)(L) has reference to the wastes which EPA has not listed as hazardous. Therefore, Missouri's small quantity exemption for the substances listed in (6)(L) is of no concern under the federal program.
Subsection (6)(I) has reference to "Discarded Commercial Chemical Products, Off-Specification Species, Containers, and Spill Residues Thereof", and is Missouri's counterpart to40 CFR 261.33. Paragraph (6)(I)5 contains a list of substances identical to 40 CFR 261.33(e). Under the Missouri regulation, the small quantities which are subject to reduced management requirements are set forth in paragraphs (6)(I)1-4, whereas under the EPA regulation these quantities are set forth in 40 CFR 261.5(e). In either case, the same effect is achieved. Less than 1 kilogram of a listed commercial product or manufacturing chemical intermediate ((6)(I)1), or less than 1 kilogram of an off-specification product or intermediate which would be listed if it met specifications ((6)(I)2), is subject to reduced management requirements, as is provided in 40 CFR 261.5(e)(1). Paragraph (6)(I)4, regarding 100 kilograms of residues of contaminated soil, water or debris, is identical in effect to 40 CFR 261.5(e)(2).
The only divergence between the state and federal regulations is in the treatment of some residues left in containers and inner liners. Under the federal program, the residues are regulated, but not the containers and inner liners themselves.40 CFR 261.7 and 261.33(c). However, the state has chosen to regulate containers and inner liners in which hazardous wastes are found, as well as regulating the wastes themselves. 10 CSR 25-4.010
(6)(J), the Missouri supplemental list for non-specific sources, includes number MF13, "[a]ny container not meeting the definition of an empty container", and which has contained any listed substance or substance having hazardous characteristics. "Container" is defined in 10 CSR 25-3.010(1)(C)10 broadly, and would include an inner liner.
Under the federal program, an exclusion from regulation is provided with respect to residues remaining in a container or inner liner defined as empty. 40 CFR 261.7(a)(1), (b)(1) and (b)(2). The definition of empty, in relation to wastes other than the acutely hazardous category, is such that it amounts to a small quantity exemption. The state regulations achieve an identical effect. The state definition of empty, 10 CSR 25-3.010(1)(E)2, is the same as 40 CFR 261.7(b)(1), except that the state definition does not include the alternative weight test adopted in the August 18, 1982 Federal Register. The lack of the alternative test does not render the state definition of empty inequivalent. The state definition does not specifically address containers which held compressed gas, as does40 CFR 261.7(b)(2). However, the requirement in 40 CFR 261.7(b)(2) is implicit in the state definition of empty, as a compressed gas container from which no additional material can be removed by conventional emptying techniques would necessarily be approaching atmospheric pressure. Therefore, the state treatment of residues, other than residues of acutely hazardous wastes, is equivalent to the federal treatment of those residues.
As to residues of acutely hazardous wastes found in containers and inner liners, neither the state nor the federal regulations provide a small quantity exemption other than the one kilogram exemption found at 40 CFR 261.5(e)(1) and (f) and10 CSR 25-4.010(6)(D)3. 40 CFR 261.7(b)(3) provides that a container or inner liner which held a substance on the acutely hazardous list is considered empty only if it has been triple rinsed or has undergone equivalent cleaning. However, this appears not to be a small quantity exemption, because the container or inner liner would be truly empty.
10 CSR 25-4.010(6)(I)3 also requires triple rinsing or equivalent cleaning for a container or inner liner which contained an acutely hazardous substance, but only if the container has more than a 20 liter capacity, or if more than 10 kilograms of inner liners are generated or accumulated. If the 20 liter/10 kilogram threshold is not exceeded, the container or inner liner is not considered a hazardous waste, and is not subject to regulation. However, any residues of acutely hazardous wastes remaining in the container or inner liner would still be regulated, subject to the one kilogram small quantity exemption. Thus10 CSR 25-4.010(6)(I)3 does not provide a small quantity exemption, and is not at variance with the small quantity exemptions at40 CFR 261.5.
Consistent with the small quantity exemptions under the federal program, small quantity exemptions under the state program do not remove the waste from regulation. Instead, the waste is subject to reduced management requirements. 10 CSR 25-4.010
(6)(D)4 provides that as to small quantities, the generator must treat the waste to render it non-hazardous, dispose of the waste on-site in a facility permitted under Section 260.205, RSMo 1978 (a sanitary landfill), or ensure delivery to an off-site facility permitted or certified under the Hazardous Waste Management Law or permitted by another regulatory agency (EPA or the destination state). Although not expressly stated, an on-site treatment facility would require a permit under 10 CSR 25-7.011(1)(A) unless it is an exempted wastewater treatment facility or elementary neutralization unit, as 10 CSR 25-4.010(6)(D)4 does not specifically exclude such treatment facilities from the permitting requirements. Thus, any waste subject to the small quantity exemption must be treated, stored, and/or disposed of at facilities permitted or otherwise approved under the state program or the applicable state or federal program in another state, or in the case of on-site disposal, at a facility licensed to handle municipal or industrial solid waste, consistent with 40 CFR 261.5(g)(3).
In addition, the small quantity generator must, under10 CSR 25-4.010(1)(A), determine if his waste is hazardous, consistent with 40 CFR 261.5(g)(1). Like 40 CFR 261.5(h), 10 CSR 25-4.010
(6)(D)5 provides that small quantities of waste, as specified in (6)(D), may be mixed with non-hazardous waste and remain subject to the reduced management requirements of (6)(D), unless the resultant mixture meets any of the characteristics of a hazardous waste. The provision of 40 CFR 261.5(i) appears to be implicit in the state regulation, as a hazardous waste that exceeds small quantity levels, but which is then mixed with a non-hazardous waste, would retain its identity as a hazardous waste, unless the mixture no longer meets any of the characteristics tests, and is delisted under 10 CSR 25-4.010(7).
The Commission has in 10 CSR 25-4.010(6)(E) adopted four other exemptions. Paragraph (E)1 exempts fly ash, bottom ash and scrubber sludge from fossil fuel-burning power plants, which is equivalent to the exclusion in 40 CFR 261.4(b)(4). Paragraph (E)2 exempts cement kiln dust, as does 40 CFR 261.4(b)(7). Paragraph (E)3 exempts lead mine tailings, which falls within the exclusion at 40 CFR 261.4(b)(7). And paragraph (E)5 exempts irrigation return flows, as does 40 CFR 261.4(a)(3). Other exclusions found at 40 CFR 261.4(b) have not been adopted by the state. To this extent, the coverage of the state program is broader than that of the federal program. In addition,10 CSR 25-7.050(5)(A) provides an exemption from most storage and disposal requirements of the state regulations, for smelting slag and impoundment solids from the smelting industry. These wastes are wholly exempted from the federal program. 40 CFR 261.4(b)(7).
We find that the exclusions under the state statute and regulations are not substantially different than the exclusions under the federal program.
II. STANDARDS FOR GENERATORS OF HAZARDOUS WASTE
RCRA § 3002, 42 U.S.C. § 6922
 A. State statutes and regulations provide coverage of all the generators of hazardous waste which is regulated under the state program. (See 40 CFR Part 262 and 123.128(b)(2)).
Citation of Laws and Regulations
Sections 260.360 and 260.380; 10 CSR 25-4.010 and 5.010
Explanation of Legal Authority
Section 260.360(8) defines a generator as "any person who produces waste." In Parts I. A. and D., supra, we discussed the definitions of "waste" and "hazardous waste" and the universe of hazardous waste covered by the state program, and found that the state program is consistent with the federal program in its coverage. Section 260.380.1 provides that after six months from the effective date of the regulations adopted by the Commission, hazardous waste generators must comply with ten enumerated requirements respecting the hazardous waste which they produce. With the exception of the limited small quantity exemptions discussed in Part I.D., supra, and found to be consistent with the exclusions under the federal program, § 260.380.1 applies to all generators of all hazardous waste which is regulated under the Missouri Hazardous Waste Management Law.
The Commission has in 10 CSR 25-5.010 adopted regulations concerning the duties of generators. Subsection (1)(A) of that regulation provides that all persons who generate in any one month or dispose of at one time the quantities of hazardous waste specified in 10 CSR 25-4.010 must register. The registration process is the state's equivalent to the federal program process of notification by generators under § 3010 of RCRA, and of obtaining a generator identification number under40 CFR 262.12. The quantities referred to in 10 CSR 25-5.010(1)(A) as being specified in 10 CSR 25-4.010 are the small quantity exemption ceilings. Thus, those who generate in any one month more than the small quantity exemption level must register. This is consistent with 40 CFR 261.5(b).
10 CSR 25-5.010(1)(A) says nothing about the accumulation of hazardous wastes, instead requiring registration by generators who at one time dispose of wastes in quantities as specified in10 CSR 25-4.010. Thus, one who comes within the small quantity exemption in terms of his monthly generation, but accumulates (without disposal) more than the small quantity accumulation ceilings in 10 CSR 25-4.010(6(D), is not required to register. However, it appears to us that a non-registered generator would still be required to comply with all of the other requirements of10 CSR 25-5.010, such as labeling and record keeping, and manifesting when the wastes are transported off-site, as sections (4) through (10) of the rule apply to all generators, seemingly without regard to the registration requirement. We cannot say whether EPA will view the failure to require registration by some generators, while all generators must meet the substantive standards contained in 10 CSR 25-5.010, as a substantial gap in the coverage of generators under the state program.
With the exception of the gap in the registration requirement for accumulators of hazardous waste, noted above, the state regulations provide coverage of all the generators of hazardous waste which is regulated under the state program.
 B. State statutes and regulations require all generators of waste to determine whether their waste is hazardous. (See 40 CFR 262.11).
Citation of Laws and Regulations
Section 260.380.1; 10 CSR 25-4.010
Explanation of Legal Authority
Section 260.380.1(8) requires, inter alia, generators to perform such monitoring and analyses as specified by Commission regulations. The Commission has adopted in 10 CSR 25-4.010(1) a requirement that all generators of waste who know or have reason to believe that their waste is hazardous must evaluate their waste in accordance with the characteristics tests set forth in sections (2)-(5) of the regulation, unless the generator's waste is listed, or unless the generator elects to declare his waste hazardous without testing. Therefore, 10 CSR 25-4.010(1), like40 CFR 262.11, requires the generator to determine whether his waste is hazardous. However, because of the "who know or have reason to believe" clause in 10 CSR 25-4.010(1)(A), we cannot say that the regulation requires all generators to determine whether their waste is hazardous, as does 40 CFR 262.11.
 C. State statutes and regulations require all generators covered by the state program to comply with reporting and record keeping requirements substantially equivalent to those found in 40 CFR 262.40 and 262.41. (See 40 CFR 262.40 and 123.128(b)(3)).
Citation of Laws and Regulations
Sections 260.370 and 260.380; 10 CSR 25-5.010
Explanation of Legal Authority
As previously noted, § 260.380.1(1) expressly requires generators to file reports providing information on hazardous waste generation. In addition, § 260.380.1(6) requires generators to initiate a manifest with each shipment of hazardous waste, and complete and file the manifest with the Department in accordance with Commission regulations. Section 260.370.3(1)(g) authorizes the Commission to adopt regulations establishing procedures and requirements for reporting the generation and transportation of wastes. And § 260.380.1(8) requires generators to maintain records as specified by Commission regulations.
Regulation 10 CSR 25-5.010(5)(A) requires generators to keep for at least three years the following: (1) a copy of, or the information from, each manifest; and (2) the registration information required by section (3) of the rule. The first category of records to be retained is not identical to 40 CFR 262.40(a), in that the federal regulation does not seem to allow the alternative of retaining the information from the manifests, without keeping the manifests themselves. The Commission believes that the availability of the information contained on the manifest would be substantially equivalent to having a copy of the manifest itself. The second category of information required to be kept under 10 CSR 25-5.010(5)(A), registration data, would include all tests, waste analyses and determinations made in the process of identifying the generator's wastes as hazardous. Thus, the second category of information is equivalent to40 CFR 262.40(c).
40 CFR 262.41 requires an annual report from each generator, and 40 CFR 262.40(b) requires a copy of each annual report to be kept for at least three years. Neither of these is addressed in10 CSR 25-5.010(5)(A). The Commission does not require an annual report from generators, instead requiring all manifests to be filed with the Department on a quarterly basis. 40 CSR 25-5.010 (4)(G). This provides the same information as the annual report required by 40 CFR 262.41(a), but on a more timely basis. As noted earlier, the state regulations require the generator to keep either a copy of the manifest, or the information from each manifest, for a period of three years.
An exception generator report is required by the state regulations when the generator does not receive the completed manifest from the treatment, storage or disposal facility within 30 days after shipment, as do the federal regulations. However, state regulations do not require a copy of those reports to be kept by the generator for three years, as does 40 CFR 262.40(b). While the exception generator reports may also be on file with the Department, we cannot say whether EPA would consider their availability in the Department's files to be substantially equivalent.
 D. For hazardous wastes that are accumulated by generators for short periods of time prior to shipment, state statutes and regulations require that such generators accumulate such wastes in a manner that does not present a hazard to human health or the environment. (See 40 CFR 262.34 and 123.128(b)(4)).
Citation of Laws and Regulations
Section 260.280; 10 CSR 25-5.010 and 7.050
Explanation of Legal Authority
All generators of hazardous waste in Missouri are required to containerize and label all hazardous waste, segregate all hazardous waste from non-hazardous waste, incompatible waste and materials, and other potential hazards, and provide safe storage and handling, including spill protection, from the time of generation to the time of removal from the generator's site, as specified in Commission regulations. Section 260.380.1(2), (3) and (4). These duties are without regard to the period of accumulation. Section 260.395.13 exempts from the requirement to obtain a facility permit the on-site storage of hazardous waste as exempted by the Commission by regulation, but such storage must conform to the requirements of RCRA and the state Hazardous Waste Management Law, along with the applicable standards and regulations adopted under the state statute, and any other applicable spill prevention and hazardous materials storage requirements provided by law.
The Commission has by regulation specified the requirements for on-site storage for short periods of time. 10 CSR 25-7.050(2)(A) provides that on-site storage for 90 days or less does not require a permit. However, the short-term storage must meet specified requirements concerning maintenance and inspection,10 CSR 25-7.050(2)(A)1, handling of ignitable, reactive or incompatible wastes, 7.050(2)(A)2, and containerization and labeling, 7.050(2)(A)3. In addition, the requirements of 10 CSR 25-7.050(3) and (4), which set storage facility design standards and operating procedures for containers and tanks, are applicable to on-site storage for 90 days or less, as well as to those facilities requiring a permit.
The requirements for short-term on-site storage are addressed under the federal program in 40 CFR 262.34. 40 CFR 123.128(b)(4) does not refer to 40 CFR 262.34. Thus, it does not appear that the state must have provisions substantially equivalent in all respects to 40 CFR 262.34 in order to satisfy the requirements of 40 CFR 123.128(b)(4). Nevertheless, we have compared the provisions of the Missouri regulations applicable to short-term on-site storage of waste with 40 CFR 262.34. We believe that the state regulations are entirely consistent with 40 CFR 262.34.
As with 40 CFR 262.34(a), 10 CSR 25-7.050(2)(A) provides that on-site storage of hazardous wastes for not more than 90 days does not require a permit. 10 CSR 25-7.050(2)(B) states the converse, that on-site storage for more than 90 days requires a storage facility permit. On-site storage for 90 days or less is subject to certain conditions and requirements set out or cross-referenced in 10 CSR 25-7.050(2)(A). We will below compare the requirements set forth in 40 CFR 262.34 with those in the state regulation. Only where the language of the state regulation is not identical or substantially identical to the federal regulation will the provisions be discussed.
40 CFR 262.34(a)(1) requires that the stored wastes be placed in containers or tanks, and that the provisions of40 CFR Part 265, Subpart I or J, be complied with, depending on whether a container or tank is used. This implies that surface impoundments and waste piles may not be used. 10 CSR 25-7.050(2)(A)6 requires compliance with the applicable provisions of sections (3) and (4) of the same rule, relating to containers and tanks. Thus, while it appears that the Commission anticipated that short-term storage would be accomplished in containers and tanks, there is no express requirement that only those types of vessels be used. However,10 CSR 25-7.050(2)(A)3 does require that all short-term storage meet the containerization requirements of 10 CSR 25-5.010(6), which in turn references the U.S. Department of Transportation requirements at 49 CFR Parts 100 through 189. This requirement appears to effectively prohibit the use of surface impoundments and waste piles for short-term storage, as these latter facilities could not meet DOT requirements.
The requirements of 40 CFR Part 265, Subpart I, are found in the state regulations as follows: 265.171 is found at10 CSR 25-7.050(3)(B); 265.172 is found at 7.050(3)(C); 265.173 is found at 7.050(3)(E); 265.174 is found at 7.011(3)(E)3.B(I); 265.176 is found in 7.050(3)(G); 265.177(a) is found in 7.050(3)(D)1; 265.177(b) is found in 7.050(3)(D)2; and 265.177(c) is found in 7.050(3)(D)3.
The requirements of 40 CFR Part 265, Subpart J, are found in the state regulations as follows. Section 265.192(a) is found in 10 CSR 25-7.050(4)(C)1 and 2 which together prohibit placing incompatible wastes and materials in a tank without complying with special requirements identical to 40 CFR 265.17(b). Section 265.192(b) is met by 10 CSR 25-7.050(4)(B), as the state requirement that storage tanks be made of or lined with a material compatible with the waste to be contained, and be free of leaks, cracks, holes or other deterioration, is equivalent to the federal requirement that wastes not be placed in a tank if they would cause the tank or liner to rupture, leak, corrode or otherwise fail.
Section 265.192(c) is addressed at 10 CSR 25-7.050(4)(A)2 and (4)(F)2. The federal requirement is that uncovered tanks be maintained with a minimum two feet of freeboard, or in the alternative, have a containment structure with a capacity of at least the volume represented by the top two feet of the tank.10 CSR 25-7.050(4)(A)2 requires all above ground tanks to have a containment structure with a capacity equal to the largest tank, plus the capacity to hold a 25-year, 24-hour rainfall. This more than meets the alternative federal requirement. As to uncovered below ground tanks, 10 CSR 25-7.050(4)(F)2 requires that sufficient freeboard be maintained to prevent overtopping by wind or wave action, or by a 24-hour, 25-year storm. Neither a containment structure nor a specific minimum freeboard is required. However, as paragraph (4)(F)2 would ensure against overtopping due to wind and wave action, or due to a 25-year precipitation event, we believe that it provides an equivalent degree of protection as does specifying a two foot freeboard.
40 CFR 265.192(d) requires tanks into which there is a continuous feed of wastes to be equipped with a means to stop the inflow. 10 CSR 25-7.050(4)(F)1 provides that "controls and practices must be used to prevent overfilling." As the requirement of the federal regulation appears to be to prevent overfilling, we deem the state regulation to be equivalent in effect.
40 CFR 265.194 requires certain inspections of tanks. The state regulations are equivalent. 10 CSR 25-7.050(2)(A)1 incorporates by reference the inspection provisions of10 CSR 25-7.011(3)(E)3. The requirements of 40 CFR 265.194 are addressed in the state regulations as follows: 265.194(a)(1) is found in 7.050(4)(G)1.A; 265.194(a)2 is found in 7.011(3)(E)3.A(I); 265.194 (a)(3) is found at 7.050(4)(G)1.B; 265.194(a)(4) is found at 7.011(3)(E)3.B(I); and 265.194(a)(5) is found at 7.011(3)(E)3.B(II).
40 CFR 265.197 requires that at closure of a facility, all hazardous wastes and residues must be removed from tanks, discharge control equipment and discharge confinement structures.10 CSR 25-7.050(2)(A)7 requires compliance with 10 CSR 25-7.011
(9)(A)3 at closure of a short-term storage area. The latter regulation contains closure requirements identical in effect to 40 CFR 265.197.
40 CFR 265.198 and 265.199 set requirements for ignitable, reactive and incompatible wastes in tanks. The state regulations are equivalent. Section 265.198(a) is addressed at 10 CSR 25-7.050(4)(E)1 in an identical fashion, except that the alternative in 265.198(a)(1) is not found in the state regulation. This makes the state regulation, in effect, more stringent. Section 265.198(b) is found at 10 CSR 25-7.050(4)(E)2. And § 265.199 is found at 10 CSR 25-7.050(4)(C).
The state's equivalents to the remainder of 40 CFR 262.34
are as follows: 262.34(a)(2) is found at 10 CSR 25-7.050(2)(A)4; 262.34(a)(3) is found at 10 CSR 25-5.010(6)(D), incorporated by10 CSR 25-7.050(2)(A)3; and 262.34(a)(4) is found in 10 CSR 25-7.050(2)(A)5. We note that 10 CSR 25-7.050 (2)(A)5 contains what is, in effect, an exemption for generators who store waste on-site for 90 days or less, from the responsibility to comply with the requirements cross-referenced in that paragraph. The exemption represents the federal small quantity exclusion levels. Under the federal program, the small quantity generator need not comply with 40 CFR 265.16 and Part 265, Subparts C and D, as to on-site storage. Therefore, the exemption levels in 10 CSR 25-7.050
(2)(A)5 are consistent with the federal program. Finally, provisions equivalent to 40 CFR 262.34(b) are found in 10 CSR 25-7.050(2)(B). Unlike the federal regulation, the state regulation makes no provision for an extension of the 90 day limitation for unpermitted on-site storage. This makes the state provision more stringent.
10 CSR 25-7.011(2)(B) makes reference to additional exceptions to the requirement to obtain a permit for on-site storage extending beyond 90 days. The exceptions found in10 CSR 25-7.011(1), cross-referenced in 10 CSR 25-7.050(2)(B), have been discussed in Part I.D, supra. The exceptions in 10 CSR 25-7.050
(5), also cross-referenced in 10 CSR 25-7.050(2)(B), relating to special standards for on-site storage of certain wastes without the need to obtain a permit, are not inconsistent with the federal program. The first category of wastes, covered by 10 CSR 25-7.050
(5)(A), is smelting slag and impoundment solids from the smelting industry. These wastes are wholly exempted from the federal program. 40 CFR 261.4(b)(7).
A second category, found in 10 CSR 25-7.050(5)(B), are those wastes which cause the generator to register under the state program, but which are not subject to storage standards under the federal program. These would be the state supplemental list wastes which do not exhibit the characteristics specified in10 CSR 25-4.010(2)-(5), and the wastes which are not acutely hazardous and are generated or accumulated in quantities less than the federal small quantity level of 1000 kilograms, but more than the state small quantity level of 1000 kilograms. The supplemental list wastes which do not exhibit characteristics are simply not subject to the federal program, and the quantities less than the federal small quantities ceiling are not subject to storage standards under the federal program. See 40 CFR 261.5(f).
A third category of wastes, covered in 10 CSR 25-7.050(5)(C), are those wastes stored at resource recovery facilities, awaiting resource recovery operations. Under 10 CSR 25-7.050(5)(C), storage at these facilities does not require a permit, but the storage must be in compliance with 10 CSR 25-9.010(1)(D)3. The latter regulation provides that the storage of wastes prior to resource recovery does not require a permit if, inter alia, EPA does not require interim status or a permit. Therefore, the state regulations provide an exemption from permitting of storage awaiting resource recovery no broader than the federal exemption at40 CFR 261.6.
In conclusion, we believe that the state regulations regarding short-term on-site storage of wastes are fully equivalent to the federal regulations on the same subject.
 E. Respecting international shipments, state laws and regulations provide requirements which are substantially equivalent to those at 40 CFR 262.50, except that advance notification of international shipments, as required by 40 CFR 262.50(b)(1), shall be filed with the Administrator. (See 40 CFR 123.128(b)(5)).
Citation of Laws and Regulations
Section 260.370.3; 10 CSR 25-5.010(10)
Explanation of Legal Authority
Pursuant to its general rulemaking authority under § 260.370.3 (1), the Commission has adopted 10 CSR 25-5.010(10), which provides that any person importing hazardous waste into the United States or exporting hazardous waste to a foreign country must comply with 40 CFR 262.50. Thus, the state program is identical to the federal requirements respecting international shipments, including notification to the EPA Administrator.
 F. State statutes and regulations require that generators of hazardous waste who transport (or offer for transport) such hazardous waste off-site use a manifest system that ensures that interstate and intrastate shipments of hazardous waste are designated for delivery and, in the case of intrastate shipments, are delivered only to facilities that are authorized to operate under an approved state program or the federal program. (See 40 CFR 262.10(a)(10), 262.20 and 123.128 (b)(6)).
Citations of Laws and Regulations
Sections 260.370.3, 260.380.1, 260.385, 260.390, and 260.395.13;10 CSR 25-5.010, 6.010, 6.020, 6.030, and 7.011.
Explanation of Legal Authority
Section 260.370.3(1)(g) specifically authorizes the Commission to adopt regulations establishing procedures and requirements for reporting the generation, storage, transportation, treatment, and disposal of hazardous waste. Section 260.380.1(6) requires hazardous waste generators to provide a separate manifest to the transporter for each load of waste transported from the generators' premises, and further requires generators to specify the destination of each load on the manifest. The manifest must be completed, signed and filed with the Department in the manner specified by, regulation. Section 260.380.1(7) requires generators to utilize for treatment, resource recovery, disposal or storage of hazardous waste only facilities holding a permit under the state statute or a hazardous waste management act of the federal government or another state, or a resource recovery facility exempted from permitting under the state statute. Sections 260.395.13(3) and (4) provide that a facility permit is not required for a facility, or portion thereof, which the Department certifies is engaged solely in resource recovery, and not in the treatment or disposal of hazardous waste. Thus, resource recovery facilities are authorized by the state agency, even if no permit is issued. Section 260.380.2 exempts small quantity generators from the requirements of that section, provided the wastes are managed so as not to pose a threat to human health or the environment. Under its general rulemaking powers, the Commission can nevertheless specify the management techniques for these small quantities.
As to the transporter's role, Section 260.385(3) provides that the transporter shall accept shipments of waste only if accompanied by a manifest provided by the generator and completed and signed by the generator in accordance with Commission regulations. Section 260.385(4) requires the transporter to complete, sign and file the manifest in accordance with the regulations. Section 260.385(5) requires the transporter to deliver the waste and accompanying manifest only to the destination specified by the generator on the manifest, which destination must be one of the approved facilities listed in the preceding paragraph.
10 CSR 25-5.010(4) provides that for off-site shipments of waste, the generator must initiate the manifest on a form provided by the Department, or on a form meeting the federal program manifest requirements. The manifest must contain the information specified in subsection (4)(C), including the destination facility name, address, telephone number, and state and EPA identification numbers. Subsection (4)(F) provides that the generator must contract with the destination facility for the return of the completed manifest within 15 days of receipt. If the manifest is not returned within 30 days of shipment, the generator must file with the Department an exception generator report within 45 days after shipment. The exception report contains certain information, including a description of the efforts by the generator to determine the whereabouts of the missing manifest and/or waste.
10 CSR 25-6.010(2)(B) requires a motor vehicle transporter to complete the transporter portion of the manifest by the driver signing and dating each copy received from the generator, keeping all but one of these copies (a copy is returned to the generator), obtaining a signature and date when delivering the waste to the designated facility or another transporter, and ensuring that the next transporter has a license. The transporter must have in his possession a manifest, or equivalent thereof, at all times. The "equivalent thereof" refers to 10 CSR 25-6.010(2)(B)1, which allows the transporter to accept unmanifested waste from a small quantity generator if the waste is transported to a permitted facility and the transporter maintains records substantially equivalent to the manifest information. 10 CSR 25-6.020(2)(B) requires rail transporters to follow special manifest procedures reflecting the unique shipping paper system of railroads in the United States. 10 CSR 25-6.030(2)(B), applicable to modes of shipment other than motor vehicle or rail, requires compliance with the manifest procedures of 10 CSR 25-6.010, or an alternative procedure using a shipping paper in place of the manifest.
10 CSR 25-7.011(6) requires operators of hazardous waste facilities to accept deliveries of waste only if the accompanying manifest or shipping paper meets the requirements of 10 CSR 25-5.010
and 10 CSR 25-6.010, 6.020 or 6.030. 10 CSR 25-7.011
(6)(A) further requires the facility operator to complete, sign and date the manifest or shipping paper, give one copy to the transporter, and forward the original to the generator. The facility operator must also note any discrepancies and file discrepancy reports.
There are three exceptions to the duty to accept only waste accompanied by a proper manifest or shipping paper. First,10 CSR 25-7.011(6)(A)3 allows unmanifested wastes to be accepted if directed to do so by the Department due to an emergency situation, provided that the generator files an unmanifested waste report as required in 10 CSR 25-7.011(6)(C)1.D. The direction from the Department would be pursuant to an emergency directive authorized by 10 CSR 25-7.011(2)(F), and is consistent with 40 CFR 122.27,264.76 and 265.76. Second, 10 CSR 25-7.011(6)(A)4 allows facilities to accept unmanifested wastes from persons who are exempt from generator duties, provided that the type or identity of the waste, the quantity and origin of the waste, and the identity of the person delivering the waste are provided to the facility operator. This exception would apply to deliveries from small quantity generators and exempt farmers. The federal regulations allow the acceptance of unmanifested wastes from small quantity generators, without the provisos contained in 10 CSR 25-7.011
(6)(A)4. See 40 CFR 264.76 and 265.76. Third, 10 CSR 25-7.011
(6)(A)5 allows an exception like (6)(A)4, but applicable to deliveries in quantities greater than the small quantity exclusion, where the shipment was collected from more than one small quantity generator. This exclusion would also be consistent with40 CFR 264.76 and 265.76.
Under the systems described above, hazardous waste shipped off-site or offered for shipment off-site by Missouri generators must incorporate a manifest system which is designed to ensure that wastes are destined for and delivered only to those facilities authorized under the state program, the federal program, or another state's program. As to shipments destined for a facility located in Missouri, the proscriptions applicable to transporters ensure that the waste will be delivered only to the designated approved facility.
G. The state manifest system requires that:
 1. The manifest itself identify the generator, transporter, designated facility to which the hazardous waste will be transported, and the hazardous waste being transported. (See 40 CFR 260.10(a)(10), 262.21, 123.128(b)(7)(i))
Citation of Laws and Regulations
Section 260.380.1; 10 CSR 25-5.010
Explanation of Legal Authority
Section 260.380.1(6) requires that the generator must provide a separate manifest to the transporter for each load of waste transported off-site, that the generator specify the destination of the load on the manifest, and that the manifest be completed in the manner specified by Commission regulations.10 CSR 25-5.010(4)(C) requires the generator to include on the manifest, inter alia, the generator's state and EPA identification numbers, generator's name, address and telephone number, transporter's name, address, telephone number, and EPA and state identification numbers, the destination facility's name, address, telephone number, and state and EPA identification numbers, DOT shipping name of the waste, the DOT hazard class for the waste, and the quantity, container type and number of units.
 2. The manifest accompany all wastes offered for transport, except in the case of shipments by rail or water specified in 40 CFR 262.23(c) and (d) and 263.20(e) and (f). (See 40 CFR 128(b)(7)(ii)).
Citation of Laws and Regulations
Sections 260.380.1, 260.385; 10 CSR 25-5.010, 6.010, 6.020, 6.030
Explanation of Legal Authority
Section 260.380.1(6) requires a generator to provide a manifest to the transporter for each load of waste shipped off-site, except as provided otherwise by Commission regulations. Section 260.385(3) provides that except as allowed otherwise by regulation, the transporter shall accept wastes only if accompanied by a manifest. As to shipments by motor vehicle,10 CSR 25-5.010 (4)(D) provides that the generator must keep one copy of the manifest, and give the remaining copies to the transporter.10 CSR 25-6.010(2)(B)1 allows a transporter to accept wastes without a manifest only from persons not required to register under 10 CSR 25-5.010(1), that is, only from an excluded small quantity generator. Otherwise, 10 CSR 25-6.010(2)(B)2.C provides that those who transport waste into, out of, or through the state shall have in their possession a manifest, or equivalent thereof. Where the wastes pass from one transporter to another, the initial transporter must keep one copy of the manifest, and give all remaining copies to the next transporter. 10 CSR 25-6.010(2)(B)2.B(II). The state regulations are consistent with 40 CFR 262.23(a)(3) and (b) and 263.20(a), (c) and (d).
For shipments by rail, 10 CSR 25-5.010(4)(E) provides that the generator must send at least three copies of the manifest to the next non-rail transporter, or the designated facility, if transport is solely by rail, or to the last rail transporter to handle the waste in the United States, if being exported.10 CSR 25-6.020(2)(B)2 provides that the rail transporter must keep a shipping paper containing all information from the manifest (except EPA identification numbers, generator certification, and signatures) with the waste at all times. 10 CSR 25-6.020(2)(B) also provides that when a rail transporter accepts wastes from a non-rail transporter, the rail transporter must sign and date the manifest and forward three copies to the next non-rail transporter, or to the designated facility, if the shipment is to be delivered to the facility by rail, or to the last rail transporter designated to handle the wastes in the United States. This is consistent with 40 CFR 262.23(d) and 263.20(f).
For shipments by a mode other than rail or motor vehicle,10 CSR 25-5.010(4)(F) provides that the generator must send three copies of the manifest to the designated facility, or to the last other mode transporter to handle the waste in the United States, if the waste is to be exported. Copies of the manifest are not required for the other mode transporters. 10 CSR 25-6.030(2)(B) provides that the other mode transporter shall conform to the manifest procedure set out in 10 CSR 25-6.010(2)(B), with an option of either the manifest accompanying the shipment, or the manifest being sent to the destination facility and a shipping paper accompanying the waste shipment. The shipping paper must include all information from the manifest, except EPA identification numbers, generator certification, and signatures.10 CSR 25-5.010(4)(F) and 6.030(2)(B) are consistent with 40 CFR 262.23(c) and 263.20(e), except that the federal regulations refer to bulk shipment by water, rather than "other mode" transport. It appears that the special provisions of 10 CSR 25-5.010(4)(F) and 6.030(2)(B) would be applicable to all shipments not by motor vehicle or rail, not just bulk shipments by water. This would allow, for example, a shipment by airplane or by water but not in bulk to be made without an actual manifest accompanying the wastes. However, a shipping paper with all the information from the manifest, except the information noted in 10 CSR 25-6.030(2)(B)1, would accompany the wastes. Whether the broader application of these special provisions under the state regulations would be viewed as a substantial departure from the federal scheme, we cannot say. Otherwise, state regulations are consistent with federal regulations in requiring the manifest to accompany all waste shipments, except shipments by rail and bulk shipments by water.
 3. Shipments of hazardous waste that are not delivered to a designated facility are either identified and reported by the generator to the state in which the shipment originated or are independently identified by the state in which the shipment originated. (See 40 CFR 260.10(a)(10), 262.42 and 123.128(b)(7)(iii)).
Citation to Laws and Regulations
Section 260.380.1; 10 CSR 25-5.010
Explanation of Legal Authority
Section 260.380.1(6) provides that the generator shall complete the manifest and file it with the Department in accordance with Commission regulations. Section 260.380.1(8) requires the generator to maintain records and submit reports as specified by Commission regulations on any waste generated, its transportation, and final disposition. 10 CSR 25-5.010(4)(G) requires the generator to contract with the destination facility to return the completed manifest within 15 days after receipt. If the generator has not received the manifest from the facility within 30 days of shipment, the generator must complete an exception generator report, and file same with the Department within 45 days of shipment.
10 CSR 25-5.010(4)(G) specifies the information which must be provided in the exception generator report. This includes all information necessary to enable the agency to trace the shipment, except that the regulation does not require the identity of the transporter to be reported. However, the present exception generator report, Form DNR HWG-12, requires identification of the transporter. (See Appendix VI. 23 of the Application) Further, § 260.380.1(9) empowers the Department to at any time obtain from the generator any records relating to waste generation and management. If a particular exception generator report does not disclose the identity of the transporter, or any other information needed by the Department to trace the undelivered waste, the Department can obtain this information from the generator's records. Thus, the information needed to satisfy 40 CFR 123.128 (b)(7)(iii) is readily available to the Department. See also the Department's "Procedure for Manifest Exception Report Review and Investigation", found at Appendix VI. 24 of the Application.
 4. There is notification of undelivered interstate shipments to the state in which the facility designated on the manifest is located and to any state to which the shipment may have been delivered (or to EPA for unauthorized states). (See 40 CFR 260.10(a)(10), 262.42, and 123.128(b)(8)).
Citation of Laws and Regulations
None.
Explanation of Legal Authority
No provision of the Missouri statute or regulations requires the generator to notify another state in which the designated facility is located, or any state to which the waste may have been delivered, or EPA, in the case of an undelivered interstate shipment originating in Missouri. However, we understand that the Department has undertaken to provide such notifications, upon receipt of an exception generator report. We believe that this satisfies the requirement of 40 CFR 123.128 (b)(8).
III. STANDARDS FOR TRANSPORTERS OF HAZARDOUS WASTE
RCRA § 3003, 42 U.S.C. § 6923
 A. State statutes and regulations provide coverage of all transporters of those hazardous wastes regulated under the state program. (See 40 CFR 263.10 and 123.128(c)(2)).
Citation of Laws and Regulations
Sections 260.360, 260.385, 260.390; 10 CSR 25-6.010, .020, and .030.
Explanation of Legal Authority
Sections 260.385(1) and 260.395.1 each provide that after six months from the effective date of Commission regulations, no persons may transport hazardous waste in Missouri without possessing a transporter license. The Commission regulations regarding transportation became effective January 1, 1980. "Person" is defined in § 260.360(13) to cover any legal entity. Regulations require license applications from motor vehicle operators,10 CSR 25-6.010(1)(A), railroads, 10 CSR 25-6.020(1)(A), and all other mode haulers, 10 CSR 25-6.030(1)(A).
The statutes contain two exceptions to the above. Section260.395.6 provides that a transporter license is not required for transport of wastes on the premises where they are generated, or with respect to those persons exempted in § 260.380. As discussed in Part I.D, supra, § 260.380.2 constitutes a small quantity exclusion for householders, farmers and others, consistent with40 CFR 261.5, which we read as having the effect of exempting small quantity generators from the requirements of40 CFR Part 263, if the generator transports his own waste. The exemption of on-site transporters from licensing is consistent with40 CFR 263.10(b).
It should be noted that § 260.395.6 provides an exemption only from the need to obtain a license. That subsection specifically provides that exempted transporters are nevertheless subject to inspection by the Department, and further provides that the Department may require that the unlicensed equipment "be adequate to provide protection for the health of humans and the environment." Thus, substantive standards, such as the Missouri Public Service Commission and U.S. Department of Transportation standards referred to in 10 CSR 25-6.010(1)(C) and (2)(A), are still applicable (see also 10 CSR 25-6.020(2)(A) and 10 CSR 25-6.030(2)(A)).
With the above exceptions, the state statutes and regulations provide coverage of all transporters of hazardous waste. The exceptions are consistent with the exceptions contained in the federal program.
 B. State statutes and regulations require all transporters covered by the state program to comply with record keeping requirements substantially equivalent to those found at 40 CFR 263.22. (See 40 CFR 123.128(c)(3)).
Citation of Laws and Regulations
Section 260.385; 10 CSR 25-6.010, 6.020, and 6.030
Explanation of Legal Authority
Section 260.385(6) imposes upon hazardous waste transporters the duty to collect and maintain such records and submit such reports as are specified in the statute and in regulations and conditions of licenses adopted or issued thereunder. 10 CSR 25-6.010(2)(H) requires motor vehicle operators to file and maintain for a period of not less than three years all manifest copies signed by the generator, other transporters, and treatment, storage or disposal facility operators, and requires incident reports to be filed and maintained for the same period.10 CSR 25-6.020(2)(E) requires railroads to file and maintain for a period of not less than three years copies of all hazardous waste manifests and shipping papers. 10 CSR 25-6.030(2)(E) requires other mode transporters to retain for three years all hazardous waste shipping information. And like 40 CFR 263.22(e),10 CSR 25-6.010(2)(H)6, 6.020(2)(E)3, and 6.030(2)(E)2 provide that the three year period of retention of records is automatically extended during an unresolved enforcement action, or as requested by the department.
The record keeping requirements for transporters contained in the state regulations identified above are substantially equivalent to the federal regulations at 40 CFR 263.22. However, the state counterpart to 40 CFR 263.22(d) is not as broad in its coverage as the federal regulation. 40 CFR 263.22(d) requires specified record keeping for transporters who transport hazardous waste out of the United States. A substantially similar requirement is found in 10 CSR 25-6.010(2)(H)2, applicable to motor vehicle transport. A similar provision is not found in either10 CSR 25-6.020 or 6.030. We cannot say whether the lack of such a provision in 6.020 or 6.030 presents a substantial inequivalency.
 C. State statutes and regulations require transporters of hazardous waste to use a manifest system that ensures that interstate and intrastate shipments of hazardous waste are delivered only to facilities that are authorized under an approved state program or federal program. (See 40 CFR 260.10(a)(10), 263.20 and 123.128(c)(4)).
Explanation of Legal Authority
See Part II. F., supra.
 D. State statutes and regulations require that transporters carry the manifest with all shipments except in the case of shipments by rail or water specified in 40 CFR 263.20(e) and (f). (See 40 CFR 123.128(c)(5)).
Explanation of Legal Authority
See Part II.G.2, supra.
 E. For hazardous wastes that are discharged in transit, state statutes and regulations require such transporters to notify appropriate state, local and federal agencies of the discharges and to clean up such wastes or to take action so that such wastes do not present a hazard to human health or the environment. Such requirements are substantially equivalent to those found at 40 CFR 263.30 and 263.31. (See 40 CFR 123.128(c)(f)).
Citation of Laws and Regulations
Section 260.370; 10 CSR 25-6.010, 6.020 and 6.030
Explanation of Legal Authority
Section 260.370.3(1) provides the general rulemaking power of the Commission to implement, enforce and effectuate the powers, duties and purposes of the state statute "as the commission may deem necessary to provide for the safe management of hazardous wastes to protect the health of humans and the environment." Further, § 260.370.3(1)(c) specifically authorizes the adoption of regulations for the transportation of hazardous wastes. And, § 260.370.3(1)(g) authorizes regulations to establish procedures and requirements for the reporting of transportation of hazardous wastes. Pursuant to these provisions, 10 CSR 25-6.010(2)(G) sets forth mandatory emergency procedures. 10 CSR 25-6.020(2)(D) and 6.030(2)(D) make these procedures applicable to rail and other mode transporters. These requirements are identical in substance to 40 CFR 263.30 and 263.31, except that no specific reference is made in the state regulation to the notification required by33 CFR 153.203 in the case of water shipments. However, as notification is, in the order of priority set forth in 33 CFR 153.203(c), first to the National Response Center, as is specified in10 CSR 25-6.010(2)(G)2.C, the same result is accomplished. Thus, the state regulations are substantially equivalent to 40 CFR 263.30
and 263.31.
IV. STANDARDS FOR TREATMENT, STORAGE AND DISPOSAL FACILITIES.
RCRA § 3004, 42 U.S.C. § 6924
 State statutes and regulations provide standards applicable to treatment, storage and disposal facilities which are substantially equivalent to 40 CFR Part 265. State law prohibits the operation of facilities not in compliance with such standards in the following manner:
Citation of Laws and Regulations
Sections 260.390, 260.425.1; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.390(2) provides that after six months from the effective date of Commission regulations, facility owners and operators must operate their facilities in accordance with standards, rules and regulations adopted under the Hazardous Waste Management Law, and in accordance with permit terms and conditions. Facility regulations became effective on January 1, 1980. Section 260.425.1 provides that it is unlawful for any person to violate the Hazardous Waste Management Law or any standard, rule, regulation, order, or license or permit term or condition adopted or issued under the law. Section 260.425.1 goes on to provide for injunctive relief and penalties for any such violation. We read the cited statutes and regulations to prohibit the operation of a facility not in compliance with facility standards adopted in Commission regulations or imposed as permit terms or conditions.
The Commission has in 10 CSR 25-7.011(3)(A)1 provided as follows:
 In addition to the standards in this rule, all hazardous waste facilities shall comply with the applicable standards set forth in 40 CFR Part 265 until such time as the facility receives a permit under the federal Resource Conservation and Recovery Act, P.L. 94-580, as amended.
We read this provision of the state regulations to require that until the state is granted authorization under RCRA to issue permits to a certain type of facility, and a facility actually receives its RCRA permit, it must meet all requirements in40 CFR Part 265 applicable to that class of facility. This approach is consistent with the federal requirements at 40 CFR 265.1(b) and 40 CFR 123.128(e). It is unnecessary to specifically examine Part 265 regulations applicable to those types of facilities for which the state is not currently requesting Phase II interim authorization. By adopting 40 CFR Part 265 by reference in10 CSR 25-7.011(3)(A)1, the state program ensures that all facilities permitted by the state will meet Part 265 standards until the state receives either interim or final authorization.
V. INSPECTIONS
RCRA § 3007, 42 U.S.C. § 6927
 A. State law provides authority for officers engaged in compliance evaluation activities to enter any conveyance, vehicle, facility or premises subject to regulation, or in which records relevant to program operations are kept, in order to inspect, monitor, copy or otherwise investigate compliance with the state program, including compliance with permit terms and conditions and other program requirements.
Citation of Laws and Regulations
Sections 1.020, RSMo 1978; 260.375(9), 260.377, 260.380.1,260.385, 260.390, 260.410.1.
Explanation of Legal Authority
Section 260.375(9) is the basic right of entry provision in the Missouri Hazardous Waste Management Law. It authorizes the Department's representatives to develop facts and make inspections and investigations, and in the connection therewith to "enter, at all reasonable times, in or upon any private or public property for any purpose required by sections 260.350 to 260.430
or any federal hazardous waste management act." The term "property" includes both real and personal property. Section 1.020(11), RSMo. 1978. Therefore, § 260.375(9) authorizes entry in or upon conveyances and vehicles, as well as facilities and premises.
Section 260.375(9) sets forth a number of purposes for which entry may be made. They include, without limitation: (1) developing and implementing standards, rules and regulations, orders, and license and permit terms and conditions; (2) inspecting or investigating any records required to be kept by the statute or any license or permit issued thereunder; (3) inspecting any hazardous waste management practice which is believed to violate the statute, or any standard, rule, regulation, order, license, or permit, or otherwise endangers human health or the environment; and (4) inspecting the site of any suspected violation.
Additional inspection provisions are found in other parts of the statute. Section 260.377 directs the Department to conduct inspections of all hazardous waste facilities, to determine compliance by the licensee or permittee with the statute, regulations and permit conditions. Section 260.410.1 provides that the Department shall conduct investigations upon receipt of information concerning alleged violations, and may conduct other investigations it deems advisable to further the purposes of §§ 260.350 to 260.430. Section 260.380.1(9) directs generators to "allow the department to make unhampered inspections at any reasonable time of hazardous waste generation and management facilities located on the generator's property and hazardous waste generation and management practices carried out on the generator's property." Section 260.385(7) commands transporters to "allow the department to make unhampered inspections at any reasonable time of all facilities and equipment." Section 260.390(7) contains an identical command with regard to facility owners and operators.
The above provisions constitute a broad grant of authority to the Department to enter property, conduct inspections, take samples, and inspect and copy records relating to compliance with the state program, including license and permit terms and conditions. Section 260.375(9) further prohibits any person from refusing entry or access or obstructing or hampering an inspection, and provides for issuance of search warrants in aid thereof. The state statutes clearly provide the authority required by 40 CFR 123.128(g)(3), and are identical in effect to § 3007(a), RCRA.
VI. ENFORCEMENT REMEDIES
RCRA § 3006, 42 U.S.C. § 6926
State statutes provide the following:
 A. Authority to restrain immediately by order or by suit in state court any person from engaging in any unauthorized activity which is endangering or causing damage to public health or the environment. (See 40 CFR 123.128 (f)(1)(i)).
Citation of Laws and Regulations
Sections 260.420.1, 260.425.1
Explanation of Legal Authority
The Missouri Hazardous Waste Management Law provides a variety of remedies to the Department of Natural Resources to restrain activity which is endangering public health or the environment. Section 260.420.1 provides two remedies in case of "imminent hazard", wherein the placing or escape of a hazardous waste may cause death, personal injury, acute or chronic disease, or serious environmental harm. Under such circumstances the Department or Commission may issue an order "directing the hazardous waste generator, transporter, facility operator or any other person who is the custodian or has control of the waste . . . to eliminate such hazard." Section 260.420.1(1). Or, in the alternative, the Department or Commission may request the Attorney General or appropriate prosecuting attorney to file suit for temporary and permanent injunctive relief, including a temporary restraining order. Such action shall take precedence over all other matters in the circuit court. Section 260.420.1(2). In addition, Section 260.425.1 authorizes suit for injunctive relief to prevent any violation or imminent violation of the Hazardous Waste Management Law, or any regulation, order, license, or permit adopted or issued thereunder. Injunctive relief would include a temporary restraining order. Rule 92.02, VAMR. State law provides ample remedies to immediately restrain all unauthorized activities which are threatening public health or the environment.
 B. Authority to sue in courts of competent jurisdiction to enjoin violations of any program requirement. (See 40 CFR 123.128(f)(1)(ii)).
See Part VI. A, supra.
 C. Authority to assess or sue to recover in court civil penalties in at least the amount of $1,000 per day for any program violation or to seek criminal fines in at least the amount of $1,000 per day for any program violation. (See 40 CFR 123.128(f)(1)(iii)).
Citation of Laws and Regulations
Section 260.425
Explanation of Legal Authority
Section 260.425.1 authorizes civil suit, at the request of the Department or the Commission, to recover penalties of up to $10,000 per day for violation of the statute, or any standard, rule or regulation adopted under the statute, or any order, license, permit or other determination issued under the statute. In addition, § 260.425.2 makes hazardous waste transportation practices in violation of the statute a Class A misdemeanor. Section260.245.3 makes knowingly making a false statement, representation or certification in an application, record, report, manifest or other document filed or kept under the statute, or falsifying or tampering with a monitoring device or result therefrom a Class A misdemeanor, punishable by a $5,000 fine and/or one year in jail. Section 260.245.4 imposes a criminal fine of $2,500 to $25,000 per day for knowingly treating, storing or disposing of hazardous waste in violation of the statute. And § 260.425.5 makes it a Class A misdemeanor to own, operate or maintain a hazardous waste disposal facility in a manner which permits any acts or practices in violation of the statute. Except as provided otherwise in § 260.425.3, Class A misdemeanors are punishable by a $1,000 fine ($5,000 for a corporation). Sections 560.016 and560.021, RSMo 1978. The Missouri Hazardous Waste Management Law contains ample provisions to satisfy the requirements of 40 CFR 123.128(f)(1)(iii).
VII. PUBLIC PARTICIPATION IN THE STATE ENFORCEMENT PROCESS
RCRA § 7004, 42 U.S.C. § 6974
 A. The state provides for public participation in the state enforcement process by providing intervention as of right in any civil action to obtain the remedies specified in Part VI above by any citizen having an interest which is or may be adversely affected. (See 40 CFR 123.128(f)(2)(i)).
Citation of Laws and Regulations
rule 52.12(a), Missouri Rules of Civil Procedures (VAMR)
Explanation of Legal Authority
Rule 52.12(a), VAMR, sets forth the circumstances where a person is permitted to intervene in an action as a matter of right. Those circumstances are as follows: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. Rule 52.12(a) is the same as Rule 24(a) of the Federal Rules of Civil Procedure. Since the state's rule governing the right of intervention is identical to the federal rule, we believe that public participation in the enforcement process in Missouri meets the requirements of 40 CFR 123.128(f)(a)(i).
VIII. AUTHORITY TO SHARE INFORMATION WITH EPA
RCRA § 3007(b), 42 U.S.C. § 6927
 A. State statutes and regulations provide authority for any information contained or used in the administration of the state program, including information submitted to the state under a claim of confidentiality, to be available to EPA upon request without restriction. (See 40 CFR 123.132(a)).
Citation of Laws and Regulations
Section 260.430.1
Explanation of Legal Authority
Section 260.430.1 governs the disclosure or nondisclosure of information submitted to the Department or Commission under the statute. The general rule is that all information will be made available to the public. However, if the submitter requests in writing that the information be kept confidential, and makes an adequate demonstration that the information constitutes trade secrets, or that the information is entitled to confidential treatment in order to protect a secret plan, process, tool, mechanism or compound, or to protect a trade, business or manufacturing process, the information shall be kept confidential, unless nondisclosure would result in an unreasonable threat to human health or other living organisms. In such case, the information must be disclosed to the public, even if it constitutes legitimate confidential business information. If the Department director determines that the information should be disclosed, § 260.430.1 provides for notice to the submitter and an opportunity for the submitter to obtain administrative and judicial review, prior to actual disclosure.
We note that certain information submitted to EPA under the federal program is also subject to nondisclosure requirements. Section 3007, RCRA. EPA has promulgated regulations at40 CFR Part 2 governing the handling of information submitted under claim of confidentiality. One of the categories of information which is subject to federal confidentiality requirements is confidential business information. 40 CFR 2.201. We read the federal regulations to provide protection for as broad a category of business information as is protected by § 260.430.1. See40 CFR 2.201(e), 2.208(c), and 2.208(e)(1).
The regulations at 40 CFR Part 2 also contain mandatory procedures to be followed by EPA in determining whether business information is entitled to confidential treatment. Included is a requirement to give the business claiming confidentiality notice and the opportunity to seek judicial review of a determination of nonconfidentiality, prior to disclosure. 40 CFR 2.205(f). We believe that these procedures, if adhered to by EPA, will provide the same degree of protection to the business as is provided by § 260.430.1.
In light of the fact that federal regulations at40 CFR Part 2
facially provide the same degree of protection for trade secrets and confidential business information as is provided by the state statute, we believe that § 260.430.1 does not prohibit the Department or Commission from sharing such information with EPA. So long as EPA can protect the information to the same extent as the Department or Commission, assuming protection is warranted, we do not view EpA as being a part of the "public", as that term is used in § 260.430.1. Cf. Interco, Inc. v. FTC, 478 F. Supp. 103
(D.C. D.C. 1979). Under such circumstances, EPA would be entitled to information submitted to the Department or Commission under §§ 260.350 to 260.430, even if submitted to the Department under a claim of confidentiality. Of course all information not subject to confidentiality claims would be available to EPA, the same as any other person, without restriction.
Our opinion in regard to the above is premised exclusively on the protection facially afforded by 40 CFR Part 2 against improper disclosure of confidential information. We are aware that the Department and EPA have entered into a contract whereby EPA covenants to treat all information received from the Department, which was submitted to the Department under a claim of confidentiality, in accordance with 40 CFR Part 2. Should this agreement lapse, should EPA amend 40 CFR Part 2 to materially lessen the protections afforded thereunder, or should it appear that EPA is not following its own regulations or the agreement with the Department, we would have to reexamine our opinion.
IX. STATE PERMITTING REQUIREMENTS
RCRA § 3005, 42 U.S.C. § 6925
 A. State statutes and regulations prohibit the operation of facilities engaged in the storage of hazardous waste in containers, in the storage or treatment of hazardous waste in tanks, or in the treatment of hazardous waste by incineration, without a permit. The state allows the above named facilities which would quality for interim status under the federal program to remain in operation pending permit action if they comply with the facility standards at 40 CFR Part 265. (See 40 CFR 123.129(b)).
Citation of Laws and Regulations
Sections 260.360, 260.390, 260.395.7; 10 CSR 25-7.011
Explanation of Legal Authority
Sections 260.390(1) and 260.395.7 both provide that after six months from the effective date of regulations, it is unlawful for a hazardous waste facility to be constructed, substantially altered or operated without a permit from the Department. Regulations governing facility permits became effective January 1, 1980 (10 CSR 25-7.010, now rescinded and replaced by 10 CSR 25-7.011). Therefore, the Missouri statutes have prohibited facility construction and operation without a permit since July 1, 1980. Section 260.360(10) defines a hazardous waste facility as "any property that is intended or used for hazardous waste management including, but not limited to, storage, treatment and disposal sites." This broad definition makes it clear that any storage or treatment facilities are subject to permitting, and that the prohibition on operation without a permit is applicable to all such facilities.
Regulation 10 CSR 25-7.011 sets forth general permitting requirements for all owners and operators of hazardous waste facilities which treat, store or dispose of such wastes, except as specifically exempted in section (1) of that rule (10 CSR 25-7.011(1)(A) and (2)(A)). The exemptions were discussed in Part I.D, supra, and found to be consistent with federal exclusions and exemptions.
As to treatment, storage and disposal facilities which qualify for interim status under federal regulations, 10 CSR 25-7.011(1)(D) provides that those facilities will be granted state interim status. As a condition of state interim status, such facilities must comply with all the applicable provisions of40 CFR Part 265, in lieu of other provisions of 10 CSR 25-7, until the final administrative disposition of the facility permit application is made by the Department. 10 CSR 25-7.011(1)(D)4 and 5.
 B. State statutes and regulations require that facilities that would be deemed to have a federal permit by rule under 40 CFR 122.26 must obtain permits or are otherwise subject to fully enforceable state standards which are substantially equivalent to federal standards at 40 CFR 122.26. (See 40 CFR 123.129(f)).
Citation of Laws and Regulations
Sections 260.390, 260.395, 260.425.1; 10 CSR 25-7.011
Explanation of Legal Authority
 40 CFR 122.26 provides for permits by rule for certain types of facilities, rather than EPA issuing individual permits to those facilities. The facilities presently covered by § 122.26 are publicly owned treatment works (POTWs), injection wells, and ocean disposal barges or vessels. The latter category is clearly inapplicable to Missouri. An injection well is defined as a well into which fluids are injected, 40 CFR 260.10. Section 577.155, RSMo Supp. 1982, prohibits the use of wells to dispose of liquid or semiaqueous waste. We deem § 577.155 and 40 CFR 260.10 to refer to the same types of materials when using the terms "liquid or semiaqueous" and "fluid". While injection wells associated with oil and gas operations regulated by the Missouri Oil and Gas Council are excepted from the prohibition in § 577.155, those wastes are not regulated under RCRA. See 40 CFR 261.4(b)(5). Therefore, for the purposes of this memorandum only permits by rule for POTWs are relevant.
Missouri does not issue permits by rule. Rather, 10 CSR 25-7.011(1)(B) exempts POTWs from permitting, so long as the operator meets certain conditions. The conditions contained in10 CSR 25-7.011(1)(B)1 are substantially identical to the conditions in40 CFR 122.26(c). The exclusion of POTWs from permitting, while requiring those facilities to meet specified conditions, is consistent with § 260.395.13, which requires those facilities exempted from permitting to comply with § 260.390(3)-(7), the manifest, record keeping and reporting provisions for facility operators. The conditions imposed by 10 CSR 25-7.011(1)(B)1 are fully enforceable under § 260.425.1, as § 260.395.13 clearly exempts such facilities only from the procedural necessity to obtain a permit, and not from substantive standards.
In addition, 10 CSR 25-7.011(1)(B)2 grants to elementary neutralization units and wastewater treatment units the Commission's equivalent to a permit by rule, upon certain conditions. That paragraph requires the exempted facilities to meet the standards in 40 CFR Part 266, Subpart B, as published in the November 17, 1980 Federal Register. Because 40 CFR 122.21(d) (2)(vi), 264.1(g)(6) and 265.1(c)(10) presently wholly exempt such units from all federal program requirements, pending EPA's decision whether to adopt proposed 40 CFR Part 266, Subpart B, or similar regulations, the state regulations are presently broader in coverage than the federal regulations.
 C. State statutes and regulations which allow exemptions from state permitting requirements do not apply to persons other than those excluded by the federal program at 40 CFR 122.21(d)(2). (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
Sections 260.360, 260.390, 260.395.13; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.395.13 exempts three types of facilities from the procedural requirement to obtain a permit. They are: (1) on-site storage facilities exempted from permitting by Commission regulation, (2) POTWs possessing a permit from the Missouri Clean Water Commission, and (3) resource recovery facilities certified by the Department as engaged solely in resource recovery and not treatment or disposal. All facilities exempted under § 260.395.13 are required to comply with the manifest, record keeping, and reporting requirements mentioned in § 260.390(3)-(7).
The Commission has expanded upon Section 260.395.13 in10 CSR 25-7.011(1)(B) and (1)(C). Subsection (1)(B) exempts from permitting POTWs, elementary neutralization units, and wastewater treatment units, upon certain conditions. As discussed in Part IX.B supra, these exemptions are the Commission's version of permits by rule, and comply with 40 CFR 122.26(c) and proposed40 CFR 122.26(d).
10 CSR 25-7.011(1)(C) contains another set of exemptions from the requirement to hold a permit. Paragraph 1 of that subsection exempts a licensed or permitted solid waste facility which accepts hazardous waste only from generators qualifying for the 100 kilogram small quantity exclusion. This permitting exemption is consistent with 40 CFR 122.21(d)(2)(iii). We note that the state exemption is actually narrower than its federal counterpart, by reason of the cross-reference in 10 CSR 25-7.011
(1)(C)1 to 10 CSR 25-4.010(6)(D)1, which has reference to the state's 100 kilogram per month small quantity exemption for wastes which are not acutely hazardous. The exemption from permitting contained in 10 CSR 25-7.011(1)(C)1 does not apply to the receipt of acutely hazardous wastes, even if offered by a person who qualifies as a small quantity generator of those wastes.
Paragraph 2 of 10 CSR 25-7.010(1)(C) exempts certified resource recovery facilities from permitting requirements, so long as those facilities are in compliance with 10 CSR 25-9.010. Likewise, 10 CSR 25-7.050(5)(C) exempts resource recovery facilities from the standards for storage facilities contained in that rule, if the conditions of 10 CSR 25-9.010(1)(D)3 are met. Rule 9.010 sets special requirements for resource recovery facilities, as defined in 10 CSR 25-9.010(1)(A). Subsection 9.010(1)(A) is so worded as to exclude from its coverage any facilities providing any treatment or disposal services. We read subsection 9.010 (1)(A) to have reference to the same types of activities as are covered under the term "beneficial use or reuse or legitimate recycling or reclamation," as used in 40 CFR 261.6, except that the federal regulation allows treatment prior to recycling, while10 CSR 25-9.010(1)(A) does not allow facilities providing interim treatment to qualify for the special exemption from permitting. Paragraph (1)(D)3 of 10 CSR 25-9.010 further excludes from the coverage of the rule those storage facilities for which EPA requires interim status or a permit, thus requiring permitting of those facilities which are required under the federal regulations to attain interim status or obtain a permit. The state permitting exemption for resource recovery facilities does not apply to facilities handling those categories of wastes mentioned in40 CFR 261.6(b), making the state exemption consistent with the federal exemption.
Paragraphs 3, 4 and 5 of 10 CSR 25-7.011(1)(C) exempt from facility permitting those generators accumulating waste on-site in compliance with 10 CSR 25-7.050(2), which in Part II.D, supra,
we found to be equivalent to 40 CFR 262.34, farmers disposing of waste pesticides in accordance with 10 CSR 25-5.010(11), which is identical to 40 CFR 262.51, and totally enclosed treatment facilities. The same exemptions are found in 40 CFR 122.21
(d)(2)(i), (ii) and (iv). No other exemptions from facility permitting exist under state statutes or regulations, other than those exclusions listed in § 260.355, discussed at Part I.D,supra. We found those exclusions to be consistent with the federal program.
 D. State statutes and regulations require that permits be effective for fixed terms no greater than 10 years. (See 40 CFR 123.129(e)).
Citation of Laws and Regulations
Section 260.395; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.395.12 provides that a hazardous waste facility permit shall be issued for a period up to five years. It may be renewed upon proper application by the permittee and after a determination by the Department that the applicant is in compliance with the Missouri Hazardous Waste Management Law and regulations, orders and permit terms and conditions adopted or issued thereunder. A renewal application is subject to full notice and public hearing requirements. Section 260.395.8. The statutory five year term for facility permits has been adopted in10 CSR 25-7.011(2)(D)2. The same provision requires a new permit for continuation of activities beyond the expiration of the permit.
 E. State statutes and regulations require that all permits contain fully enforceable conditions that are substantially equivalent to those at 40 CFR 122.7, 122.11 and 122.28 (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
Sections 260.370.3, 260.395.9, 260.425.1; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.370.3(1)(d) empowers the Commission to adopt regulations setting the standards under which permits will be issued. In 10 CSR 25-7.011(2)(D), standard conditions of facility permits are set forth. Both § 260.395.9 and 10 CSR 25-7.011(2)(E) authorize the Department to place special conditions in permits. Permit conditions are fully enforceable under § 260.425.1, which provides for injunctive relief and civil penalties of up to $10,000 per day of violation.
A comparison of 40 CFR 122.7, 122.11 and 122.28 to10 CSR 25-7.011(2)(D) follows. 40 CFR 122.7 sets forth standard conditions applicable to all facility permits. The state regulations contain no requirement equivalent to the second and third sentences of the introductory paragraph of § 122.7, which require that all standard permit conditions either be set out in the permit, or a citation to the regulations containing those conditions be given in the permit. 10 CSR 25-7.011(2)(D)1 is identical to 40 CFR 122.7(a), except that the federal provision states that permit noncompliance "is" grounds for enforcement action, permit modification or revocation, or refusal to reissue a permit, while the state regulation provides that such noncompliance "may be" grounds for enforcement or permit actions. As such actions inherently involve the exercise of enforcement discretion by either EPA or the Department, use of the discretionary term in the state regulation does not make it inequivalent to the federal provision.
40 CFR 122.7(b) and 10 CSR 25-7.011(2)(D)2 are identical. Paragraph 7.011(2)(D)1, second sentence, is identical to 122.7(c), except the words "to state" have been added to the state provision. We do not believe that the additional words make the condition any less stringent, as it seems to be the Commission's intent to prohibit a permittee from defending in an enforcement action by claiming that compliance would have required reduced activities at the facility. However, to eliminate any doubt on this point, we recommend that the words "to state" be deleted before the Department applies for final authorization under RCRA.
Paragraphs 7.011(2)(D)3 and (D)9 are identical to 122.7(d) and (e), respectively. Paragraph 7.011(2)(D)4 is identical to 122.7(f), except that the word "stay" in the federal regulation was changed to "preclude" in the state regulation. We are sure that the Commission intended the meaning of the condition to be the same as the meaning of the federal condition. Paragraph 7.011(2)(D)5 is identical to 122.7(g), and paragraphs 7.011(2)(D)6 and 7 are equivalent to 122.7(h) and (i), respectively.
The requirement of 122.7(j)(1) is addressed in the first sentence of 7.011(2)(D)8.A. However, we are unable to say how the phrase "at least as specified in 10 CSR 25-7" affects the interpretation of this condition, if at all. Paragraphs 7.011 (2)(D)8.B and D are identical to 122.7(j)(2) and (3), respectively.
40 CFR 122.7(k) provides that all applications, reports, or information submitted to EPA must be signed and certified. That subsection contains a cryptic cross-reference to § 122.6, which we take to mean that the signatures and certifications must conform to the requirements of that section of the federal regulations. Paragraph 7.011(2)(D)10 of the state regulations contains a requirement that the permittee comply with the reporting requirements contained in subsection 7.011(6)(C), and a further requirement that the signatory requirements of paragraph 7.011 (2)(C)3 will apply to this reporting. Subparagraph 7.011 (2)(C)3.B requires all reports to be hand signed, and 7.011 (2)(C)3.C contains a certification identical to 122.6(d). Subparagraph 7.011(2)(C)3.C by is own terms applies only to permit applications, but we believe it clear that the Commission intended in 7.011(2)(D)10 to require the certification for all reports submitted under 7.011(6)(C).
Subsection 7.011(6)(C) contains all of the facility reporting requirements under the state regulations, except manifest discrepancy reports (7.011(6)(A)1), and the reports required after the trial burn process for incinerators. 10 CSR 25-7.020
(11)(B)(9) requires all trial burn submissions to comply with provisions at 10 CSR 25-7.011(2)(C)3 concerning signatures and certifications. Paragraph 7.011(6)(A)1 does not require manifest discrepancy reports to be certified, and it is unclear whether the term "reports required by permits" in 7.011(2)(C)3.B includes manifest discrepancy reports.
We find only one other type of submission covered by40 CFR 122.7(k) which is not addressed in the state regulations — applications by the permittee for permit modification. The current state regulations contain no procedural requirements for such applications.
40 CFR 122.7(1) sets a number of reporting requirements as conditions of the permit. 10 CSR 25-7.011(2)(D)10 requires reporting as specified in 7.011(6)(C). 40 CFR 122.7(1)(1) and (2) are addressed in an equivalent fashion in 7.011(6)(C)1.E and (6)(C)2.A, respectively. The state regulations contain no provision like 122.7(1)(3), because state facility permits are not transferrable. Paragraph 122.7(1)(4) is covered in 7.011(6)(C) 1.A(VIII). There is no state equivalent to the compliance schedule provisions of 122.7(1)(5), as the state regulations make no allowance for compliance schedules.
The requirements of 122.7(1)(6) are addressed in equivalent fashion in 7.011(6)(C)2.B and C, except that the written incident report is required under the federal regulations to be submitted within 5 days of the incident, whereas the state regulation allows 15 days for the report to be submitted. However, we note that 40 CFR 122.28(d) allows EPA to extend the report due date to 15 days. 40 CFR 122.7(1)(7) requires all instances of noncompliance not reported under 122.7(1)(4), (5) or (6) to be reported at the time monitoring reports are submitted.10 CSR 25-7.011(10)(D) requires all instances of noncompliance to be reported with the monitoring reports. While paragraph 7.011 (2)(D)10 is broader than its counterpart, it is not inequivalent, but instead may require submission of some reports twice, such as an incident report, which under 10 CSR 25-7.011(6)(C)2.C must be submitted within 15 days of the incident, and again with the monthly monitoring reports under 7.011(6)(C)1.A (VIII).10 CSR 25-7.011(2)(H) contains a provision identical to40 CFR 122.7(1)(8). However, 7.011(2)(H) is not identified as a permit condition.
40 CFR 122.11 does not specify standard conditions. Instead, it requires that all permits contain other requirements in the nature of special conditions, which we suppose must be developed on a case by case basis. The state regulation addresses these requirements in 10 CSR 25-7.011(2)(D), which sets standard conditions for all permits. The provisions of 40 CFR 122.11(a) are found in identical fashion in the last sentence of 7.011(2)(D)(9). We believe that the Commission intended to address the requirements of 122.11(b) in the second sentence of 7.011(2)(D)8.A. However, the sentence is incomplete, and addresses sampling, rather than monitoring as specified in the federal regulation. Thus, we are not sure that 7.011(2)(D)8.A covers all that is intended under the federal provision. There is no provision in the state regulations which requires the permit to specify all applicable reporting requirements, as does 122.11(c). However, we note that 10 CSR 25-7.011(2)(D)10 does provide, as a standard condition of the permit, that the permittee must comply with the reporting requirements specified in 7.011(6)(C). While we discern in the provisions of 10 CSR 25-7.011(2)(D) just mentioned an intent by the Commission to address the requirements of 40 CFR 122.11, we believe that they would better fit in10 CSR 25-7.011(2)(E), which addresses special permit conditions.
40 CFR 122.28 sets forth additional standard conditions for facility permits. The state regulations contain no equivalent to 122.28(a). This provision excuses the permittee from compliance with permit conditions to the extent authorized in an emergency permit. As discussed later in this memorandum, the state does not issue emergency permits. Instead, 10 CSR 25-7.011(2)(F) authorizes the Department to issue emergency directives under circumstances which would warrant an emergency permit under the federal program. We believe that the provision contained in40 CFR 122.28(a) is implicit in 10 CSR 25-7.011(2)(F).
The requirement of 40 CFR 122.28(b) is found in10 CSR 25-7.011(2)(D)8.C. Provisions substantially identical to 122.28(c) are found at 7.011(6)(C)1.E, and provisions substantially identical to 122.28(d) are found at 7.011(6)(C)2.B. These provisions are incorporated by reference in the reporting condition found in 7.011(2)(D)10. The requirement of 122.28(e)(1) is found in 7.011(6)(A)1. However, 7.011(6)(A)1 does not purport to be a permit condition itself. Nor does 7.011(2)(D) make reference to 7.011(6)(A)1. Therefore, although manifest discrepancy reports are required of facility operators, the state regulations do not require a permit condition respecting such reports. The provision of 122.28(e)(2) is found in 7.011(6)(C)1.D, incorporated by reference into 7.011 (2)(D)10. A provision equivalent to 122.28(e)(3) is found in 7.011(6)(C)1.A, and is made a permit condition by incorporation by reference in 7.011(2)(D)10.
The state regulations specify as permit conditions most of the provisions of 40 CFR 122.7, 122.11 and 122.28. Whether the provisions which are lacking defeat substantial equivalency, we cannot say.
 F. Where state statutes and regulations authorize permit variances, permits are required to contain enforceable requirements that compliance be attained on fixed schedules and as soon as possible. Schedules of compliance are required where immediate compliance is not required. (See 40 CFR 123.129(d), 123.7 and 122.10).
Citation of Laws and Regulations
Sections 260.375, 260.390, 260.395.9, 260.405;10 CSR 25-7.011
Explanation of Legal Authority
The general rule under the Missouri Hazardous Waste Management Law and implementing regulations is that a facility operator must be in compliance with all program requirements before an operating permit will be issued. Sections 260.375(12), 260.390(2) and 260.395.9; 10 CSR 25-7.011(2)(C)4.C. Further, it does not appear that the Department, in issuing a permit, can grant a waiver from facility requirements in the nature of a compliance schedule, as opposed to compliance at the time the permit is issued. Id. However, the Commission is authorized to grant individual variances from the requirements of the statute and regulations upon the showing specified in § 260.405.1. Presumably, this would include the authority to grant a variance from specific facility requirements which are set forth in the statute or regulations.
There is no specific requirement in either the statute or regulations that any variance from permitting requirements contain a condition that compliance be attained on a fixed schedule, or as soon as possible. However, § 260.405.3 does provide that the variance cannot be issued for more than one year, and may not be renewed unless the applicant can show that circumstances precluded compliance within the one year period. In addition, the variance cannot be renewed if renewal will result in an unreasonable risk to human health or the environment. Because of the short period of any variance, and the further restrictions on renewal, we believe it is the clear legislative intent that full compliance, if excused at all, would be excused for the shortest period possible. In other words, if a variance is granted, we believe that § 260.405.3 implicitly requires compliance as soon as possible.
As to requiring compliance on a fixed schedule, § 260.405.3 specifically empowers the Commission to place terms and conditions on the variance. The ordering of a fixed schedule of compliance would appear to be within the scope of authority to fix the terms and conditions of a variance. However, in view of the short term allowed for a variance, it is of no practical significance that a fixed compliance schedule is not mandated by the statute. We believe that § 260.405.3 is properly read as requiring compliance within one year, or sooner if possible. If, during that year, circumstances arise which prevent compliance by the end of the variance period, a renewal may be granted, but only if no unreasonable health or environmental risks would result. Therefore, the statute itself fixes the compliance schedule at a maximum of one year, under normal circumstances. The Commission may fix the schedule at less than a year, by issuing the variance for a shorter period of time, but may not grant a compliance period of greater than one year. In our view, no further benefit would have been derived by specifying in the statute that compliance shall be required on a fixed schedule, as the statute provides the practical equivalent thereof.
 G. State statutes and regulations provide that where permits are transferred, the transferee must comply with all requirements of the permit. (See 40 CFR 123.7 and 122.14).
Citation of Laws and Regulations
Section 260.395.15
Explanation of Legal Authority
It is our view that under the Missouri Hazardous Waste Management Law, a permit may not be transferred. No mention is made in the statute of permit transfers. More importantly, § 260.395.15 provides that a permit may not be issued to any person who has habitually engaged in specified practices, or who has been adjudged in contempt of a court order enforcing solid or hazardous waste laws of Missouri, another state, or the federal government. Therefore, the identity and previous actions of an applicant for a permit, regarding compliance with solid and hazardous waste management laws, is always a relevant consideration in the permit issuance process. The concept of transfer of permits is not consistent with this inquiry, and a permit, once issued, is not transferable.
 H. State statutes and regulations authorize modification of permits where alterations are made to a facility or to activities at a facility or where new information is received. (See 40 CFR 123.129(d), 123.7, 122.15(a)(1) and (2)).
Citation of Laws and Regulations
Section 260.375; 10 CSR 25-7.011
Explanation of Legal Authority
The Department is given express authority in § 260.375(13) to modify permits. 10 CSR 25-7.011(2)(G) sets forth certain grounds for permit modification. Included as grounds for modification are alterations or additions to the facility, or new activities (7.011(2)(G)1.A), and new information (7.011(2)(G)1.C). These provisions are substantially identical to 40 CFR 122.15(a)(1) and (2).
 I. State statutes and regulations require that a facility operating in interim status amend its application where changes occur in: (i) the waste handled at the facility; (ii) processes and activities at the facility; (iii) facility ownership or operational control. (See 40 CFR 123.129(d), 123.7, 122.22(c)(iii) and 122.23(c)).
Citation of Laws and Regulations
 10 CSR 25-7.011
Explanation of Legal Authority
Regulation 10 CSR 25-7.011(1)(D) provides for interim status for certain categories of facilities which have achieved interim status under RCRA. The facility operator must submit to the Department the Part A application submitted to EPA, plus EPA's verification of interim status, as proof of federal interim status. If the facility operator submits the required proof, the facility is deemed to have state interim status. During state interim status, 10 CSR 25-7.011(1)(D)3 requires the facility to meet the applicable standards in 40 CFR Part 265, and40 CFR 122.23, rather than the standards in 10 CSR 25-7.40 CFR 122.23(c) requires Part A of the application to be amended upon the occurrence of any of the circumstances specified above. As 10 CSR 25-7.011(1)(D)3 incorporates by reference 40 CFR 122.23(c), the facility operating under state interim status must amend its application under the circumstances specified in 40 CFR 122.23(c).
 J. If the state allows the use of emergency permits, state statutes and regulations require standards for temporary emergency permits in situations of imminent and substantial endangerment to human health substantially equivalent to those at 40 CFR 122.27. (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
Section 260.375; 10 CSR 25-7.011
Explanation of Legal Authority
The Department has express authority to enter such orders as may be necessary in a situation of imminent hazard. Section260.375(16). The Commission has in 10 CSR 25-7.011(2)(F) specified guidelines and limitations on the Department's use of orders to allow short-term facility operations which are not otherwise permitted. These orders are called emergency directives, rather than permits, in keeping with their function and status. The provisions of 10 CSR 25-7.011(2)(F) are substantially identical to 40 CFR 122.27(a), with one exception. Although the state regulation requires that the emergency directive be made known to the public through a legal notice, 10 CSR 25-7.011
(2)(F)1.F, unlike 40 CFR 122.27(a)(5), does not specify what information shall be contained in the public notice. We are unable to say whether EPA will view this difference as affecting substantial equivalency.
X. STATE PERMITTING STANDARDS
RCRA § 3004, 42 U.S.C. § 6924
 State statutes and regulations require that all permits issued by the state require compliance with standards substantially equivalent to federal standards at 40 CFR Part 264, Subparts A through E and G through J. These standards include:
Prefatory Note
The Department of Natural Resources has provided, at Appendix VIII of the Application for Interim Authorization, a detailed subsection by subsection comparison between the federal and state regulations. We have independently performed a detailed and careful comparison of the state regulations with 40 CFR Part 264, for equivalency. With the comparison already provided in Appendix VIII of the Application, it would serve no useful purpose to repeat the comparison here. Except as noted below, we find the present state regulations to be substantially identical to40 CFR Part 264 requirements.
 A. Preparedness for and prevention of releases of hazardous waste controlled by the state and contingency plans and emergency procedures to be followed in the event of a release of such hazardous waste. (See 40 CFR Part 264, Subparts C and D).
Citation of Laws and Regulations
 10 CSR 25-7.011(4) and (5)
Explanation of Legal Authority
Preparedness and prevention are addressed in the state regulations at 10 CSR 25-7.011(4). Only two differences exist between the state regulations and the federal provisions at40 CFR Part 264, Subpart C. First, 40 CFR 264.31 speaks of unplanned sudden or non-sudden releases, whereas 10 CSR 25-7.011
(4)(B) addresses all releases. Thus, the coverage of the state regulation is potentially broader than that of its federal counterpart. Second, 40 CFR 264.37(a) requires the permittee to familiarize local hospitals with the properties of the wastes handled at the facility and health effects which could result from fires, explosions and other releases of wastes at the facility.10 CSR 25-7.011(4)(G)1.D requires only one hospital to be so familiarized.
Contingency plans and emergency procedures are addressed at10 CSR 25-7.011(5). There are few differences between those requirements and 40 CFR Part 264, Subpart D. In 10 CSR 25-7.011
(5)(B)1, the state regulation requires a plan to protect human health and the environment in the event of releases of waste, whereas 40 CFR 264.51(a) speaks of minimizing the threat to human health and the environment from unplanned sudden or non-sudden releases. The changes in terminology obviously do not affect the equivalency of these provisions. In 10 CSR 25-7.011(5)(E), (5)(G)2, and (5)(G)7, the state regulations require certain things be done promptly, whereas 40 CFR 264.54, 264.56(b) and264.56(g) require those same things to be done immediately. We are informed that the Commission believes that prompt action is substantially equivalent to immediate action. 40 CFR 264.55
requires that an emergency coordinator be at the facility or on call "at all times." 10 CSR 25-7.011(5)(F) limits this requirement to the period prior to closure of the facility. We believe that this is the intent of the federal requirement, and that the state provision is equivalent.
 B. Security to prevent unknowing and unauthorized access to the facility. (See 40 CFR 264.14).
Citation of Laws and Regulations
 10 CSR 25-7.011(3)(D)
Explanation of Legal Authority
 10 CSR 25-7.011(3)(D) requires facility operators to take measures to prevent unknowing and unauthorized access to the facility which are substantially identical to 40 CFR 264.14.
C. Facility personnel training. (See 40 CFR 264.16)
Citation of Laws and Regulations
 10 CSR 25-7.011(3)(F)
Explanation of Legal Authority
 10 CSR 25-7.011(3)(F) requires a program of training of facility personnel substantially identical to 40 CFR 264.16.
 D. Compliance with the manifest system, including the requirement that the facility owner or operator or the state in which the facility is located must return a copy of the manifest to the generator or to the state in which the generator is located indicating delivery of the waste shipment. (See 40 CFR 264.71).
Citation of Laws and Regulations
 10 CSR 25-7.011(6)
Explanation of Legal Authority
 10 CSR 25-7.011(6)(A) contains the state's manifest requirements for facility operators. These requirements are substantially identical to the requirements of 40 CFR 264.71 and 264.72 with two exceptions. First, 10 CSR 25-7.011(6)(A) requires the operator to return the original of the manifest to the generator within 15 days, rather than 30 days, as allowed by 40 CFR 264.71. Second, the state regulation requires the operator to submit a manifest discrepancy report promptly after the 15 day period for resolution of the discrepancy. 40 CFR 264.72 requires this report to be made immediately after the 15 day period. We see no lack of equivalency in this regard.
 E. Closure and financial requirement. (See 40 CFR Part 264, Subparts G and H).
Citation of Laws and Regulations
 10 CSR 25-7.011(8) and (9), 7.020, 7.050, 8.010
Explanation of Legal Authority
Closure and post-closure care requirements are addressed in10 CSR 25-7.011(9). The closure requirements are substantially identical to 40 CFR 264.110-.115, with a few minor exceptions noted below. We are not at this time required to compare state regulations with 40 CFR 264.117-.120, regarding post-closure care, as those sections apply exclusively to facilities addressed under Phase II, Component C, of interim authorization. Missouri is not applying for Component C authorization at this time.
We note that in 10 CSR 25-7.011(9)(A)2, which is equivalent to 40 CFR 264.111, the word "by" was erroneously placed between "environment" and "the" in the fifth line of the paragraph. Although the presence of this word makes a literal reading of the provision somewhat difficult, the intent of the Commission is nevertheless clear. 40 CFR 264.112(a), second sentence, provides that the closure plan is to be submitted as part of the permit application, and is to be approved as part of the permit issuance process. 10 CSR 25-7.011(9)(B)1 also provides for submission of the closure plan with the permit application. Although the state regulation does not expressly require approval of the plan, it does provide that the plan will be a condition of the permit, and in the succeeding sentence refers to maintenance of the "approved" plan at the facility. We believe it clear that the plan will be approved by the Department as part of permit issuance.
The fourth sentence of 40 CFR 264.112(a), as well as the second sentence of 264.112(a)(1), are addressed in 10 CSR 25-7.011(9)(B)2.A, which requires the closure plan to address how and when the facility will be closed "in accordance with this section and closure requirements in other rules of this chapter." "Closure requirements in other rules" refers to those additional requirements in 10 CSR 25-7.020(8), equivalent to 40 CFR 264.351. The requirements of 40 CFR 264.178 and 264.197, applicable to containers and tanks, are covered in 10 CSR 25-7.011(9)(A)3, rather than in 10 CSR 25-7.050.
We note that 10 CSR 25-7.011(9)(B)2.B, unlike 40 CFR 264.112
(a)(2), does not provide that a change in the estimate of the maximum inventory of wastes at the facility at any time during the life of the facility is treated as a minor modification. However, 10 CSR 25-8.010(2)(E) seems to allow to be treated as minor modifications those changes to the permit which would qualify as minor modifications under 40 CFR 122.17. Thus, the state provision is equivalent to 40 CFR 264.112(a)(2).
We note that the state regulations do not contain the parenthetical sentence in 40 CFR 264.112(a)(4). We believe that this sentence is unnecessary, as 10 CSR 25-7.011(9)(B)2.D does address the second sentence of 264.112(a)(4), which the sentence in parentheses simply modifies. The requirement of the first sentence of 264.112(a)(4), that the closure plan contain the expected year of closure, is addressed in 10 CSR 25-7.011(9)(B)2.A, which requires the plan to specify when the facility will be closed.
Financial requirements are addressed at 10 CSR 25-7.011(8). In that section the Commission has simply adopted by reference the provisions of 40 CFR Part 264, Subpart H, except 264.149 and 264.150, which are not applicable to the state programs. Thus, the state financial requirements are fully equivalent to the federal requirements.
 F. Inspections, monitoring, recordkeeping, and reporting by facility personnel. (See 40 CFR 264.15 and Part 264, Subpart E).
Citation of Laws and Regulations
 10 CSR 25-7.011, 7.020, 7.050
Explanation of Legal Authority
The Commission has adopted an approach to routine inspections somewhat different than that at 40 CFR 264.15. While 10 CSR 25-7.011(3)(E)2 requires inspections for malfunctions, deterioration, operator errors and discharges, as does 264.15(a), the state regulation does not require the facility operator to develop a written general inspection schedule. Instead, 10 CSR 25-7.011
(3)(E)3 sets forth the types of inspections which must be made, and the minimum schedule for making the inspections. This eliminates the need for the operator to develop and the Department to approve a general inspection schedule.
As to those inspection items and frequencies specifically mentioned in the federal regulations referenced at 40 CFR 264.15
(b)(4), state regulations do require the same inspections, either in 10 CSR 25-7.011(3)(E)3, or in the case of certain inspections required under 40 CFR 264.194, in 10 CSR 25-7.050(4)(G). The inspections required under 40 CFR 264.347 are addressed in10 CSR 25-7.020(7). We are not required at this time to address inspections required in 40 CFR 264.226, 264.253, 264.254, or 264.303, as those are Component C provisions. Daily inspection of areas subject to spills, as required by the third sentence of 264.15 (b)(4), is covered in 10 CSR 25-7.011(3)(E)3.A(II), by requiring daily inspections of all active portions of the facility for spills. 10 CSR 25-7.011(3)(E)4 is identical to 264.15(c), and 7.011(3)(E)5 is identical to 264.15(d), except that the 3 year record retention requirement is covered in the state regulations in 7.011(6)(B)8.
With the state program requiring the specific inspections required by the federal regulations and further specifically requiring other inspections which are covered by the federal program only in a general way, we believe that the state program provides for at least the same degree of environmental protection as does the federal program. Therefore, we believe that the state program provisions are substantially equivalent to the requirements of 40 CFR 264.15.
With regard to the record keeping and reporting provisions of 40 CFR Part 264, Subpart E, state regulations are either substantially identical or fully equivalent. The reader is referred to the detailed comparison of regulations in the Department's Application. It should be noted that the Commission requires a monthly report from facility operators, rather than the annual report specified in 40 CFR 264.75. The same information is required by 10 CSR 25-7.011(6)(C)1 as is required by 40 CFR 264.75.
 G. Use and management of containers. (See 40 CFR Part 264, Subpart I.)
Citation of Laws and Regulations
 10 CSR 25-7.011, 7.050(3)
Explanation of Legal Authority
Use and management of containers at hazardous waste facilities are covered in 10 CSR 25-7.050(3), with a few provisions required by the federal regulations being found in 10 CSR 25-7.011. The state regulations are equivalent to the provisions at40 CFR Part 264, Subpart I. Two of the state provisions require some explanation. First, the provision in 40 CFR 264.174, regarding inspection of areas where containers are stored, is covered by 10 CSR 25-7.011
(3)(E)3.B(I) and (II). Item 3.B(I) requires inspection of storage areas for leaks, rust and corrosion. We believe this to be equivalent to inspection under 40 CFR 2464.174 for leaking containers and deterioration of containers. Item 3.B(II) requires inspection of dikes and the immediately surrounding area for damage or structural weakening. We believe that compliance with item 3.B(II) would result in inspection of containment systems for signs of deterioration due to corrosion or other factors, as required by the federal provision.
Second, while 10 CSR 25-7.050(3)(F) meets the requirements of 40 CFR 264.195 respecting containment systems, we note that the state regulation is not worded as is 40 CFR 264.175(a). However, it is abundantly clear that 10 CSR 25-7.050(3)(F)1 does require the design and use of a containment structure meeting the same criteria as contained in 40 CFR 264.175(b). We also note that the state regulations do not contain the exceptions found in40 CFR 264.175(b)(3) and (4), and 264.175(c). Thus, the state regulation may be slightly more stringent, which does not affect equivalency. The remaining state counterparts to40 CFR Part 264, Subpart I, are so clearly equivalent as to not require an explanation.
H. Requirements for tanks. (See 40 CFR Part 264, Subpart J).
Citation of Laws and Regulations
 10 CSR 25-7.011, 7.050
Explanation of Legal Authority
Use and management of tanks at hazardous waste facilities is addressed in 10 CSR 25-7.050(4), with a few requirements of the federal regulations being found in 10 CSR 25-7.011. The state regulations are equivalent to the provisions of 40 CFR Part 264, Subpart J. As in the case of the container regulations, some discussion of a few provisions of the state regulations is in order. First, the state regulations do not exempt covered underground tanks which cannot be entered for inspection, as does40 CFR 264.190(b). Instead, the Commission requires of these facilities an alternate leak detection system. 10 CSR 25-7.050
(4)(A)3. Thus, the state regulations are in this regard more protective of human health and the environment.
Second, 40 CFR 264.194(a) and 10 CSR 25-7.050(4)(B) are worded rather differently. However, we believe that they are equivalent in effect. The state provision requires all storage tanks to be made of or lined with a material compatible with the waste to be contained, and further requires the tank and liner to be free of leaks, cracks, holes or other deterioration. This appears to us to be the essence of the more elaborately worded federal provision.
Third, we note that in regard to restrictions on placing ignitable or reactive wastes in tanks, the state regulations do not allow the procedure specified in 40 CFR 264.198(a)(1). To this extent, the state regulations are more protective.
Fourth, 40 CFR 264.198(b) references Tables 2-1 through 2-6 of the National Fire Protection Association's "Flammable and Combustible Liquids Code." However, 10 CSR 25-7.050(4)(E)2 refers to Tables 2-1 through 2-8 of the same code. We are informed that Tables 2-7 and 2-8 pertain to spacing between adjacent above-ground tanks. Thus, inclusion of those tables in the state regulation should not affect equivalency.
Finally, 10 CSR 25-7.050(4)(A)3 allows the use of a leak detection system in conjunction with all underground tanks, as an alternative to the inspection procedures required in40 CFR 264.194(b) and 10 CSR 25-7.050(4)(G)2. The leak detection system would be allowed for tanks which can be entered for inspection, although 40 CFR 264.194(b) does not seem to allow an exception from inspection procedures for such tanks. However, the Commission believes that leak detection systems are, in the case of underground tanks, more protective than visual inspections. If this is the case, then the state regulation must be viewed as substantially equivalent to 40 CFR 264.194(b).
 I. Requirements for incinerators. (See 40 CFR Part 264, Subpart O, 40 CFR 122.25(b)(5), and 40 CFR 122.27(b))
Citation of Laws and Regulations
 10 CSR 25-7.020
Explanation of Legal Authority
The Commission has adopted in 10 CSR 25-7.020 provisions respecting incinerators which are virtually identical to40 CFR Part 264, Subpart O. We need mention only two matters. First, the partial exemption for incinerators burning only certain types of wastes, which is mandatory under 40 CFR 264.340(b), is discretionary with the Department under 10 CFR 25-7.020(1)(B). This difference may make the state regulations somewhat more stringent, which does not affect equivalency.
Second, in 10 CSR 25-7.020(6)(B), first paragraph, comparable to 40 CFR 264.345(b), a portion of the parenthetical phrase was unintentionally deleted. While this omission makes the paragraph grammatically incomplete, we do not believe substantial equivalency should be affected. The function of this paragraph is to give direction to the permit writer in setting operating requirements for incinerators. The intention of the state regulation is sufficiently clear that there should be no inadequacy in the permit due to the omission of a portion of the parenthetical material contained in the federal regulation. Thus, 10 CSR 25-7.020(6)(B) is substantially equivalent to 40 CFR 254.345(b). The Commission is advised to correct this omission prior to applying for final authorization.
While general requirements for permit application information will be discussed later in this memorandum, we think it appropriate to discuss at this point some special requirements applicable to incinerator permit applications. These provisions are found at 40 CFR 122.25(b)(5). The Commission has adopted at10 CSR 25-7.020(10) virtually identical provisions, with one exception. The state regulations do not contain a provision similar to 40 CFR 122.25(b)(5)(iii)(E)(3). This omission was made in reliance on a memorandum dated August 26, 1982 from David B. Sussman, of EPA, to EPA Regional Office hazardous waste branch chiefs, advising that EPA had not intended to include40 CFR 122.25(b)(5)(iii)(E)(3) in the federal regulations, and that it would be deleted at a later date. In light of this memo, the absence of this provision in the state regulations cannot be considered a lack of equivalency.
The federal regulations also contain some special provisions applicable only to incinerators, which require the submission of trial burn plans and the conducting of trial burns, before a full permit can be issued. See 40 CFR 122.27(b). Virtually identical provisions are found at 10 CSR 25-7.020(11).
XI. STATE PERMITTING PROCEDURES
RCRA § 3005, 42 U.S.C. § 6925
 A. State statutes and regulations require that all new facilities for the storage of hazardous waste in containers, for hazardous waste storage or treatment in tanks, or for treatment of hazardous waste by incineration, obtain a permit prior to beginning physical construction of the facility. For existing facilities, the state requires completion of the permit application process within a reasonable time. (See 40 CFR 123.129(d), 123.7, 122.22(a)(2) and (b)).
Citation of Laws and Regulations
Sections 260.390, 260.395.7; 10 CSR 25-7.011
Explanation of Legal Authority
Sections 260.390(1) and 260.395.7 provide that after six months from the effective date of regulations adopted by the Commission, it is unlawful for any person to construct, substantially alter or operate a hazardous waste facility without first obtaining a permit from the Department. Regulations governing permits, 10 CSR 25-7.010 (now superseded by 10 CSR 25-7.011), became effective on January 1, 1980. Therefore, the prohibitions of §§ 260.390(1) and 260.395.7 are now fully effective, and a new facility must obtain a permit prior to commencing construction (see also 10 CSR 25-7.011(2)(C)4.B). As for existing facilities, operators were given a period of six months after permitting regulations were adopted in which to make application and obtain a permit. The above statutes and regulations apply to all hazardous waste facilities, including the types of facilities described above, as was explained in Part IX.Asupra.
 B. State statutes and regulations require that permit applications contain information that is substantially equivalent to information required at 40 CFR 122.4, 122.24 and 122.25. (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
Sections 260.370.3, 260.390, 260.395.7; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.370.3(1)(d) authorizes the Commission to adopt regulations setting forth standards for the issuance of permits. In addition, § 260.395.7(1) requires the facility permit applicant to furnish the Department with plans, specifications and other data necessary to demonstrate that the facility does or will provide protection to the health of humans and other living organisms, and does or will comply with the state statute and regulations and RCRA. Section 260.395.7(2)-(5) makes specific reference to certain information required in the permit application, including the demonstration of financial responsibility required by the regulations, and the environmental and geologic information, assessments and studies required by the regulations.
The Commission has in 10 CSR 25-7.011 specified the information which must be submitted with a facility permit application.10 CSR 25-7.011 requires most of the information required by the federal regulations. We will note below those instances where it appears to us that the state regulations do not require an item of information required by the federal regulations. We will also discuss below those areas where a simple cross-reference between state and federal regulations would not suffice because of differences in the phraseology used. Otherwise, the reader is referred to Appendix VIII of the Application for Interim Authorization, where a detailed comparison of state and federal regulations is provided.
10 CSR 25-7.011(2)(C)1 and 3 require the owner and operator (if different from the owner) to sign the permit application. In addition, § 260.390(1) makes it unlawful for either an owner or an operator to construct or operate a facility without a permit. We read the statute and regulations to provide for issuance of the permit to both the owner and the operator, as joint permittees. This system is equivalent to 40 CFR 122.4(b). 10 CSR 25-7.011
(2)(C), first paragraph, requires the application to be complete, and 7.011(2)(C)4.A provides that the director of the Department can issue a permit only when he determines that the application conforms to the requirements of the statutes and regulations. Conformance would include submitting all the information required by Commission regulations. Therefore, 10 CSR 25-7.011(2)(C)4.A does not allow the director to issue a permit until the application is complete, as required by 40 CFR 122.4(c).
The state regulations do not require the application to contain SIC codes for the facility, unlike 40 CFR 122.4(d)(4).40 CFR 122.4(d)(5) is inapplicable to the Missouri program, as there are no Indian lands in Missouri. As § 577.155, RSMo Supp. 1982, prohibits the use of any hazardous waste injection well which is subject to regulation under the federal program (see Part IX.B, supra), the state regulations need not contain the requirement in 40 CFR 125.4(d)(7) that the map submitted with the application show the location of the facility's injection wells.
The requirement of 40 CFR 122.4(d)(8), that the application contain a brief description of the nature of the applicant's business, is met in the state regulations in two ways. First, if the application is for an off-site facility, the nature of the applicant's business will be evident from the information submitted pursuant to 10 CSR 25-7.011(2)(C)1, particularly the description of the activities requiring a facility permit, and the list of wastes to be handled. The nature of the business will be to conduct those activities and treat, store or dispose of those wastes listed. If the application is for an on-site facility, where the applicant may be engaged in some enterprise wherein hazardous wastes are incidentally generated, the registration information required by 10 CSR 25-5.010(3), as well as the information submitted pursuant to 10 CSR 25-7.011(2)(C)1, will produce the same results as 40 CFR 122.4(d)(8).
The only provision of 40 CFR 122.24 not contained in the state regulations is 122.24(c), which requires the application to indicate if the facility is new or existing, and whether the application is a first or revised application. The Commission believes this provision is unnecessary, as its staff should be aware, on receipt of an application, if there is a previous application on file, or if it is a first application. In addition, the Commission feels that the photographs and scale drawings required by 10 CSR 25-7.011(2)(C)1.H and 1.I for an existing facility, or the absence thereof, will inform the staff whether the facility is proposed or existing.
In regard to the informational requirements of40 CFR 122.25, a preliminary note is in order. The state regulations are to some degree organized along different lines than are the federal regulations, with regard to permit application information. Most of the information required by 40 CFR 122.25 is not specifically mentioned in 10 CSR 25-7.011(2), the general permit information section of the state regulations. Instead, some of that information is specifically required in later sections of Rule 7.011. In other cases, facility standards are set forth in Rule 7.011 or other rules in Chapter 7, with the last sentence of the first paragraph of 10 CSR 7.011(2)(C)2 requiring the permit applicant to address, as part of the application, how he will meet the applicable facility standards set forth in Chapter 7. Therefore, even if a later section or rule does not expressly require information to be submitted in the permit application, but a facility standard dealing with the subject is set forth,10 CSR 25-7.011(2)(C)2 will necessarily require information to be submitted. The reader should keep this in mind when referring to the comparison between 40 CFR 122.25 and state regulations in Appendix VIII of the Application for Interim Authorization.
40 CFR 122.25(a)(2) requires that the application contain the chemical and physical analyses of the wastes to be handled at the facility. It is not clear to us that the state regulations contain this requirement. 10 CSR 25-7.011(3)(C)1 requires that a detailed waste analysis be obtained before the facility operator treats, stores or disposes of the waste. However, it does not appear that the requirement of 10 CSR 25-7.011(2)(C)2, mentioned above, would require that the waste analyses provided for in 10 CSR 25-7.011(3)(C)1 be obtained and submitted with the permit application. Rather, it would seem that 10 CSR 25-7.011
(2)(C)2 could be satisfied by simply describing how the waste analyses would be obtained prior to handling the wastes. Further, we are unsure whether the development of the list of wastes for the permit application, as required by 10 CSR 25-7.011(2)(C)1.C, would of necessity require an analysis of each waste.
10 CSR 25-7.011(5)(C)2 does appear to require that the waste analysis plan required under 10 CSR 25-7.011(3)(C)4, or something similar, be submitted with the application. Otherwise, the application would not satisfactorily address (per 10 CSR 25-7.011
(2)(C)2 how the applicant would meet the waste analysis requirements of 10 CSR 25-7.011(3)(C)1-3. Thus, the state regulations do appear to meet the requirement of 40 CFR 122.25(a)(3) that a copy of the waste analysis plan be submitted with the application.
40 CFR 122.25(a)(4) requires in the application a description of the security procedures and equipment required by the federal equivalent to 10 CSR 25-7.011(3)(D). We believe that 10 CSR 25-7.011
(2)(C)2 may reasonably be interpreted to require as part of the state application a description of the procedures and equipment which will be employed to satisfy the requirements of10 CSR 25-7.011(3)(D).
State regulations, unlike 40 CFR 122.25(a)(5), do not require a general inspection schedule to be submitted with the permit application. Instead, 10 CSR 25-7.011(3)(E)3 sets forth the specific inspections which must be made. Therefore, no general inspection schedule need be submitted. With regard to40 CFR 122.25(a)(6), it should be noted that 10 CSR 25-7.011(4)(C), (4)(E)1, (4)(E)2, and (4)(F) require the permit applicant to demonstrate to the Department director's satisfaction the justification of any waivers from preparedness and prevention requirements. Therefore, the justifications will necessarily have to be submitted to the Department. We believe that 10 CSR 25-7.011(2)(C)2 will require the applicant to submit any justifications with the permit application, as part of the demonstration how we will meet the preparedness and prevention requirements of10 CSR 25-7.011(4).
40 CFR 122.25(a)(7) requires a copy of the contingency plan to be submitted with the application. 10 CSR 25-7.011(2)(C), first paragraph, expressly requires the submission of a contingency plan as part of the application. The application requirements of 40 CFR 122.25(a)(8) are found in 10 CSR 25-7.011
(2)(C)2.C. 40 CFR 122.25(a)(9) requires a description of precautions to prevent accidental ignition or reaction of ignitable, reactive or incompatible wastes as required to demonstrate compliance with the equivalent of 10 CSR 25-7.011(3)(G). We believe that 10 CSR 25-7.011(2)(C)2 may reasonably be read to require the same demonstration in the state application.
40 CFR 122.25(a)(10) requires the submission of information concerning specified aspects of the vehicular traffic and roads in and near the facility. 10 CSR 25-7.011(2)(C)2.A(II)(d) merely requires submission of "traffic patterns within the facility." We doubt the state regulation requires the same information as required under the federal provision.
40 CFR 122.25(a)(11)(i) is met by 10 CSR 25-7.011(2)(C)1.B, which requires the location of the facility to be identified, although we note that 122.25(a)(11)(i) may not be applicable to Missouri, as Appendix VI of 40 CFR Part 264, to which 122.25 (a)(11)(i) refers, lists no Missouri counties. For the same reason, 122.25(a)(11)(ii) is inapplicable to Missouri.
40 CFR 122.25(a)(11)(ii) and (iv) require specific information concerning the location of a facility in a 100-year floodplain, and how the facility will be protected from floods, or how the wastes will be moved from the facility on threat of flood.10 CSR 25-7.011(2)(C) itself requires only that the permit application map show the 100-year floodplain area. See 10 CSR 25-7.011(2)(C)2.A(II)(i). However, 10 CSR 25-7.011(3)(H)2, like40 CFR 264.18(b), contains a general requirement that facilities located in a 100-year floodplain be protected from washout, unless the operator can demonstrate that the wastes will be moved to prevent contact with flood waters. 10 CSR 25-7.011(3)(H)3 then requires the operator to demonstrate compliance with paragraph 7.011(3)(H)2 by using the analysis described in40 CFR 122.25(a)(11). Therefore, we believe that 10 CSR 25-7.011(2)(C)2, in conjunction with 10 CSR 25-7.011(3)(H)2 and (3)(H)3, will necessarily require the permit applicant to develop and submit the information required by 40 CFR 122.25(a)(11)(iii) and (iv).
40 CFR 122.25(a)(11)(v) requires an existing facility not in compliance with the floodplain standards to submit with the application a plan showing how and when the facility will be brought into compliance. Although 10 CSR 25-7.011(3)(H)3 incorporates40 CFR 122.25(a)(11) by reference, Commission regulations prohibits use of a compliance schedule, as 10 CSR 25-7.011
(2)(C)4.A requires compliance with all facility standards before a permit can be issued, without regard to the status as a new or existing facility.
40 CFR 122.25(a)(12) requires submission of an outline of training programs required by the federal equivalent to10 CSR 25-7.011(3)(F). We believe 10 CSR 25-7.011(2)(C)2 can reasonably be interpreted to require such an outline in the state application.40 CFR 122.25(a)(13) requires submission of a copy of the closure plan, and post-closure plan, if applicable. 10 CSR 25-7.011(9)(B)1 and (9)(E)1 expressly require the submission of these plans with the state application.
40 CFR 122.25(a)(14) requires submission of proof that, as to existing facilities, the notice required by 40 CFR 264.120
(equivalent to 10 CSR 25-7.011(9)(F)3) has been recorded in the chain of title. The state regulations require the notice to be filed at closure of the facility, not at some earlier time. Further, 40 CFR 264.120 appears not to require filing of the notice at any time prior to closure. While this notice relates only to Component C facilities, not the subject of the state's present application for interim authorization, and thus the state need not have an equivalent provision at this time, we are puzzled by the requirement of 40 CFR 122.25(a)(14). We suggest that prior to preparing its application for final authorization the Department inquire of EPA whether it intended the result indicated by 40 CFR 122.25(a)(14).
40 CFR 122.25(a)(15) and (16) require submission of the current estimate of closure and post-closure costs, plus copies of the financial assurance mechanisms required under40 CFR Part 264, Subpart H. 10 CSR 25-7.011(2)(C), first paragraph, requires submission of the financial instruments with the application. However, no provision of the state regulations requires submission of either the closure or post-closure cost estimates with the permit application. Those estimates would be required for the first time under the state regulations on March 15 of the first year of operations under a permit. See 10 CSR 25-7.011
(6)(C)1.B. Of course, as the post-closure estimates apply only to Component C facilities, for which the state is not currently seeking authorization, 40 CFR 122.25(a)(16) is not presently applicable to the state.
40 CFR 122.25(a)(17) requires submission of a copy of the liability insurance policy required by 40 CFR 264.147, or demonstration of compliance with the alternative financial responsibility requirements of that section. We believe that the Commission intended by 10 CSR 25-7.011(2)(C), first paragraph, when it required submission of "financial instruments meeting the requirements of 10 CSR 25-7.011(8)", that the liability insurance policy be submitted. However, we have some reservations whether the term "financial instrument" includes a demonstration that the applicant meets the financial test which 40 CFR 264.147(f) allows as an alternative to an insurance policy. However, because under 10 CSR 25-7.011(2)(C)4.A the permit cannot be issued until the facility meets the requirements of 10 CSR 25-7.011(8), which adopts 40 CFR 264.147, the required information will as a practical matter have to be submitted at some point in the permit review process. 40 CFR 122.25 (a)(18), respecting proof of coverage of a state financial mechanism, is inapplicable to Missouri, as no such mechanisms exist.
40 CFR 122.25(a)(19) requires the submission of a topographic map containing specified information. 10 CSR 25-7.011
(2)(C)2.A requires such a map as part of the state application. Under the state regulation the map must contain almost all the information required by the federal regulation. However, identification of barriers for drainage or flood control (122.25 (a)(19)(xi)) is not required. Further, the map required by10 CSR 25-7.011(2)(C)2.A(I) need not have a minimum scale of 1 inch to 200 feet, as required by the federal provision. The maps required under 10 CSR 25-7.011(2)(C)2.A(II) and (III) do meet the federal scale requirements. In addition, the structures mentioned in the parenthetical clause in 122.25(a)(19)(x) are not all expressly included in 10 CSR 25-7.011(2)(C)2.A. We do not know whether the term "structures", as used in 10 CSR 25-7.011
(2)(C)2.A(II)(c), would include everything referenced in40 CFR 122.25(a)(19)(x) and not specifically mentioned elsewhere in the state regulation. We note that the state map need not show injection wells, as they are unlawful under § 577.155.
40 CFR 122.25(b)(1)(i) requires submission of considerable information concerning the containment system for facilities storing containers of waste. The state regulations do not contain a like provision. 10 CSR 25-7.011(2)(C)2, in requiring a demonstration of how the containment system requirements in 10 CSR 25-7.050 are being met, will undoubtedly require some of the information specifically required by 40 CFR 122.25
(b)(1)(i). However, we are not technically qualified to judge whether all such information is required by the state regulation.40 CFR 122.25(b)(1)(ii) requires submission of certain information if the facility operator is to take advantage of the exception from containment system requirements found in40 CFR 264.175(c). As 10 CSR 25-7.050(3)(G) does not provide for this exception, 40 CFR 122.25(b)(1)(ii) is inapplicable.
40 CFR 122.25(b)(1)(iii) requires submission of sketches, drawings or data demonstrating compliance with buffer zone and physical separation requirements for ignitable, reactive and incompatible wastes, found in the federal equivalents to10 CSR 25-7.050(3)(D)3 and (3)(G). We think it likely that 10 CSR 25-7.011(2)(C)2 will require the submission of similar information as part of the state application.40 CFR 122.25(b)(1)(iv) requires a description of the procedures to be used in handling incompatible wastes and materials, so as to comply with the federal equivalents of 10 CSR 25-7.011(3)(G) and 7.050(3)(D). We think it likely that 10 CSR 25-7.011(2)(C)2 requires submission of this information as well.
40 CFR 122.25(b)(2)(i)-(v) require the submission of specific information about the design of waste storage and treatment tanks. As 10 CSR 25-7.050(4) is equivalent to the federal regulations referenced in 40 CFR 122.25(b)(2), we think it likely that 10 CSR 25-7.011(2)(C)2 will require submission of much of the information required under the federal provision. Because of the technical nature of these requirements, we cannot say whether all information specified in the federal provision is required by10 CSR 25-7.011(2)(C)2.
40 CFR 122.25(b)(2)(vi) requires submission of procedures for handling incompatible, ignitable or reactive wastes in tanks, including use of buffer zones. 10 CSR 25-7.050(4)(C) and (4)(E) contain provisions regarding handling of those types of wastes which are equivalent to federal facility standards for tanks. Therefore, we believe 10 CSR 25-7.011(2)(C)2 can reasonably be read to require the submission of the type of information called for in 40 CFR 122.25(b)(2)(vi).
40 CFR 122.25(b)(3), (b)(4), (b)(6) and (b)(7), and 122.25
(c) all relate to Component C facilities. No comparison to state regulations is required for purposes of the state's present application for interim authorization. 40 CFR 122.25(b)(5) relates to informational requirements for hazardous waste incinerator permits. As noted in Part X.I, supra, the provisions at 10 CSR 25-7.020(10) are virtually identical to 40 CFR 122.25
(b)(5).
We have identified above a few instances where the state regulations may not require the submission with the permit application of all the information called for by the federal regulations. We find it impossible to judge whether the possible absence from the state permit application of a small portion of the information which the federal regulations require defeats the substantial equivalency of the state regulations. Therefore, we must leave it to EPA to make this judgment. We do note that10 CSR 25-7.011(2)(C)2.A(II)(n) allows the Department to request other relevant information, as part of the plan view drawings or topographic map. We believe that EPA should take this authority into consideration in arriving at its judgment concerning the equivalency of the state's permit application information requirements.
 C. State statutes and regulations which provide for the protection of confidential information do not allow the name and address of the permit applicant or permittee to be entitled to such treatment. (See 40 CFR 123.129(d), 123.7 and 122.19).
Citation of Laws and Regulations
Section 260.430.1.
Explanation of Legal Authority
Section 260.430.1 provides for confidential treatment of certain business information submitted to the Department or Commission under the state program. Information is entitled to confidential treatment only when requested in writing, and when a justification is provided showing that the information constitutes trade secrets or is necessary "to protect any plan, process, tool, mechanism or compound which is known only to the person claiming confidential treatment and where confidential treatment is necessary to protect such person's trade, business or manufacturing process." While the statute does not expressly state that the name and address of the permit applicant or permittee is not entitled to confidentiality, we believe the statute clearly is inapplicable to such information.
The statute speaks of confidential treatment for trade secrets, and other information relating to a plan, tool, mechanism, compound or process. The name and address of the applicant or permittee clearly does not fall within the category of items subject to protection. As Section 260.430.1 requires all other information to be made available to the public, the applicant's or permittee's name and address will always be public information.
 D. State statutes and regulations require that permit applications be signed by persons authorized to bind the facility under state law and contain a certification that the information contained in the application is true and accurate. (See 40 CFR 123.129(d), 123.7 and 122.6).
Citation of Laws and Regulations
Sections 260.370, 260.395.7; 10 CSR 25-7.011
Explanation of Legal Authority
Section 260.395.7 provides that the application for a facility permit shall be on a form provided by the Department. Section260.370.3(1)(d) empowers the Commission to adopt regulations setting standards for permit issuance. Regulation 10 CSR 25-7.011(2)(C)3.A provides that permit applications may be signed only by certain categories of persons. For a corporation, an executive officer of at least vice-presidential level must sign. For partnerships, a general partner's signature is required. For a sole proprietorship, the proprietor must sign. And for municipal corporations and other public agencies, a principal executive officer or ranking elected official must sign. 10 CSR 25-7.011
(2)(C)3.A is identical to 40 CFR 122.6(a).
With regard to a sole proprietor, the binding effect of the proprietor's signature is obvious. Further, there is no question that a general partner has the authority to bind a partnership.Chapin v. Cherry, 147 S.W. 1084 (Mo. 1912); Midland Nat. Bank v.Schoen, 27 S.W. 547 (Mo. 1894). However, as to a corporation, municipal corporation or government agency, it is less clear that a vice-president, or a ranking elected official, would have the inherent authority to bind the corporation or agency in all cases. See, e.g., Stevens Davis Co. v. Sid's Petroleum Corp.,
157 S.W.2d 246 (St.L. Ct.App. 1942).
As to corporations, municipal corporations and government agencies, we believe that it is not necessary to inquire whether the officer who signs the application has the authority to bind the corporation or agency. While one could argue that the mere submittal of the application, along with a check for the filing fee required by 10 CSR 25-7.011(2)(C), would constitute apparent authority, the better approach is to rely on the doctrine of ratification to bind the permittee. Once the corporation or agency commences any work under the permit issued in its name, it would be deemed to have accepted the benefits thereof, and would be bound by the permit, on the theory of ratification by implication. Cf. Farmers and Merchants Bank of St. Clair v. Burnsand Hood Motor Co., 295 S.W.2d 199 (St.L. Ct.App. 1956).
10 CSR 25-7.011(2)(C)3.C requires that each permit application must contain the certification set forth in that subparagraph. Summarized, the signatory must certify that he has examined and is familiar with the information in the application, and that based on the inquiry he has made, he believes the information to be true, accurate and complete. The certification required by the state regulation is identical to that required by40 CFR 122.6(d).
 E. State statutes and regulations require that the state make available for public comment prior to permit issuance, information substantially equivalent to that required at 40 CFR 124.6 and 124.8. (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
Sections 260.370, 260.395.8; 10 CSR 25-8.010
Explanation of Legal Authority
Section 260.395.8 sets forth certain statutory requirements for public notice and opportunity for the public to participate in the permitting process. In addition, §§ 260.370.3(1) and260.370.3(1)(d) empower the Commission to adopt regulations governing requirements for public notice and public participation in the permitting process. The Commission has in 10 CSR 25-8.010
adopted requirements for public notification and public involvement in the permit issuance process which are generally equivalent to the federal scheme of public participation. The state procedures include public notification of tentative decisions, preparation of fact sheets and draft permits, opportunity for public comment and public hearing, and response to comments received. The state regulation contains additional procedural requirements mandated by the Missouri Hazardous Waste Management Law. We will discuss below only those areas where the state regulations do not appear to contain a requirement identified in40 CFR 124.6 and 124.8. Otherwise, the reader is referred to the detailed comparison of regulations contained in Appendix VIII of the Application for Interim Authorization.
40 CFR 124.6(b) provides that if the issuing authority tentatively decides to deny an application, he must issue a notice of intent to deny, which shall conform to the requirements concerning draft permits. Subsection 124.6(b) goes on to provide that if the issuing authority later wishes to reverse his position concerning denial, he must withdraw his tentative decision to deny, and issue a new tentative decision and draft permit.10 CSR 25-8.010(1)(E)1 provides for the issuance of a tentative decision to deny and fact sheet. However, the state regulation makes no provision for issuance of a new tentative decision, fact sheet and draft permit if the Director decides, after issuance of a tentative decision to deny, that the permit should be issued.
40 CFR 124.6(d)(2) requires that the draft permit include all compliance schedules. As we have explained elsewhere in this memorandum, the Commission's regulations do not appear to allow the use of compliance schedules in facility permits. Therefore,40 CFR 124.6(d)(2) is inapplicable.
40 CFR 124.6(e) and 124.10(a)(ii) require that the public be notified that a draft permit has been prepared. While 10 CSR 25-8.010(1)(E)2 requires the preparation of a draft permit, nothing in the regulation requires that the public notice contain any reference to the draft permit.
40 CFR 124.8(a) requires a fact sheet to be prepared, as does the state regulation. However, the state regulation does not require that the fact sheet set forth the principal facts and significant factual, legal, methodological and policy questions considered in preparing the draft permit or tentative decision to deny the permit, as does 40 CFR 124.8(a). Further, 40 CFR 124.8(b)(4) requires the fact sheet to contain a brief summary of the basis for the conditions in the draft permit, "including references to applicable statutory or regulatory provisions." 10 CSR 25-8.010
(1)(F)4 requires that the fact sheet contain a summary of the basis for the proposed permit conditions, but does not require a reference to statutory or regulatory provisions.
40 CFR 124.8(a) provides that the fact sheet is to be sent to anyone who requests a copy. 10 CSR 25-8.010(1)(E)1.G provides for sending the fact sheet only to those persons who have previously requested notification, not to those who may request a copy of the fact sheet after notification of a tentative decision.
Except as identified above, the state regulations contain provisions regarding tentative decisions, draft permits, and fact sheets which are fully equivalent to 40 CFR 124.6 and 124.8. We believe that the federal provisions regarding fact sheets which are missing from the state regulations are relatively minor, and should not defeat substantial equivalency. Further, as the Department would not be precluded from including in fact sheets more information than that required by 10 CSR 25-8.010(1)(F), any present deficiency in the state regulation which EPA believes is substantial can be cured by an agreement between the Department and EPA to provide the additional information in state issued fact sheets. The same agreement could cover federal requirements concerning making fact sheets and draft permits available to the public.
 F. State statutes and regulations require that notice be issued to the public of preparation of the document containing the information at XI.E or draft permit and scheduling of a public hearing. (See 40 CFR 123.129(d), 123.7 and 124.10(a)).
Citation of Laws and Regulations
Sections 260.370.3, 260.395.8; 10 CSR 25-8.010
Explanation of Legal Authority
Section 260.395.8(1) requires that prior to issuing or renewing a facility permit, the Department must give public notice by press release or advertisement, and give notice to adjoining property owners and local governments. In the case of disposal facilities, § 260.395.8(2) requires that notice must be given to property owners within a mile radius of the facility, as well as requiring public notice by press release and advertisement. For disposal facilities, a public hearing must be held. As to other facilities, a public hearing must be held if requested. Section 260.370.3(1)(d) further empowers the Commission to adopt regulations concerning the issuance of permits.
10 CSR 25-8.010(1)(E) provides that upon making a tentative decision to issue or deny a permit application, the Department must make that decision known by issuing a news release, with accompanying fact sheet, targeted to news media in the area of the proposed facility, advertisement in local newspapers and on local radio stations, and mailing the news release and fact sheet to local governments, adjoining landowners (or in the case of a disposal facility, to landowners within a mile of the facility boundaries), and to anyone else who has previously requested notification.
10 CSR 25-8.010(1)(F)8 requires that the fact sheet contain an invitation to submit comments on the tentative decision, and an explanation of how to request a public hearing. 10 CSR 25-8.010(1)(G) provides that if a hearing is requested, or if a hearing is mandatory because a disposal facility permit is at issue, the Department must schedule the hearing and give public notice thereof. Public notice of the hearing is accomplished under 10 CSR 25-8.010(1)(G) in the same fashion as under 8.010 (1)(E) in relation to tentative decisions.
We note two instances in the state regulations where procedures regarding issuance of public notices and scheduling of hearings do not appear to meet federal requirements. First, unlike 40 CFR 124.10(a)(ii), the state regulations do not require the initial public notice to state that a draft permit has been prepared and is available for review, or to make any other reference to the draft permit. Second, 10 CSR 25-8.010(1)(G) provides that as to facilities other than disposal facilities, a public hearing is to be scheduled if requested within 30 days after issuance of the news release. 40 CFR 124.12(a) allows 45 days for the public to request a hearing.
 G. State statutes and regulations require that the public notice contain information substantially equivalent to that in 40 CFR 124.10(d)(1)(i)-(v) and (ix), 124.10(d)(2) and 124.10(e). (See 40 CFR 123.7).
Citation of Laws and Regulations
 10 CSR 25-8.010
Explanation of Legal Authority
The above-referenced federal regulations concern the contents of public notices issued in the permitting process, and to whom those notices are sent. 10 CSR 25-8.010(1)(E)-(G) contain similar requirements. We will compare these provisions below.
40 CFR 124.10(d) requires all public notices issued as part of the permit issuance process to contain certain specified information. Under the state regulation, information required in the notice of a tentative decision to issue or deny a permit is found in 10 CSR 25-8.010(1)(F) relating to the contents of fact sheets. Under 10 CSR 25-8.010(1)(E), the fact sheet is to be sent with the public notice. As for notices concerning the scheduling of public hearings, 10 CSR 25-8.010(1)(G)2 specifies the informational content of the notices. We interpret 40 CFR 124.15, regarding notification of the issuance of permits, and 40 CFR 124.17, regarding response to comments submitted on the tentative decision, not to require full public notice, and therefore not to be subject to 40 CFR 124.10(d).
40 CFR 124.10(d)(1)(i) requires each notice to give the name and address of the office processing the permit application.10 CSR 25-8.010(1)(G)2 requires the notice of hearing to contain the name and address of the Department. For a notice of tentative decision, 10 CSR 25-8.010(1)(F)7 expressly requires only the name and telephone number of the person within the Department from whom additional information may be obtained. However, 10 CSR 25-8.010
(1)(F)8 requires the fact sheet to contain an invitation to submit comments. We think it quite unlikely that this request for comments would not also contain an address where comments would be submitted. We also think it unlikely that the news release under 10 CSR 25-8.010(1)(E) would fail to mention that the Department is making the tentative decision. Therefore, we do not believe that the state regulation contains a substantial deficiency in this regard.
40 CFR 124.10(d)(1)(ii) requires the notice to contain the name and address of the applicant, and of the facility, if different.10 CSR 25-8.010(1)(F)2 meets this requirement, but 10 CSR 25-8.010(1)(G)2 does not require identification of the address or location of the facility, if different than the applicant's address. We feel this is a very minor omission, as any notice in this regard would logically include the facility location, even if not expressly required in the regulation.
40 CFR 124.10(d)(1)(iii) requires notices to contain a brief description of the business conducted at the facility for which a permit is being sought. 10 CSR 25-8.010(1)(F)1 contains this requirement, but 8.010(1)(G)2 does not.
40 CFR 124.10(d)(1)(iv) requires each notice to contain the name, address and telephone number of the person from whom additional information may be obtained. 10 CSR 25-8.010(1)(G)2 contains this requirement, but 8.010(1)(F)7 fails to specify that the address of this person must be stated.
40 CFR 124.10(d)(1)(v) requires notices to contain a brief description of the comment procedures, the time and place of any scheduled hearing or a statement of the procedures to request a hearing, and "other procedures by which the public may participate in the final permit decision." 10 CSR 25-8.010(1)(F)8 and (1)(G)1 fully meet the federal requirements as to comment procedures, requesting a hearing, and time and place of a scheduled hearing. The state regulation makes no provision for notification of other procedures by which the public can participate in the final decision. We are puzzled by this federal requirement, as we can discern no other requirement for public participation after the comment period has expired or a hearing has been held. We do not believe that the last requirement of40 CFR 124.10(d)(1)(v) is of any relevance in determining whether state public notice provisions are equivalent to federal requirements.
40 CFR 124.10(d)(1)(ix) requires public notices to contain any additional information considered necessary or proper." The state regulation does not contain a similar provision. Nothing in the state statute or regulations would prevent the Department from including additional information in a notice or fact sheet. Further, we are confident that if in a particular case additional information were pertinent, the Department would see fit to include it. Therefore, we see no lack of equivalency by the absence of a provision like 40 CFR 124.10(d)(1)(ix).
40 CFR 124.10(d)(2) requires that the notice of a public hearing include specified information. 10 CSR 25-8.010(1)(G)2 requires identical information. Finally, 40 CFR 124.10(e) requires that a copy of the fact sheet, permit application, and draft permit be mailed to the applicant, and to certain specified governmental agencies with regulatory responsibility, as listed in 40 CFR 124.10(c)(1)(i)-(iii). 10 CSR 25-8.010(1)(E) does not require that the draft permit be sent to anyone, including the applicant. A fact sheet must be sent to the applicant under10 CSR 25-8.010(1)(E)1.F. It would serve no purpose to send a copy of the application to the applicant. The state regulation does not require the notice, fact sheet, application or draft permit to be sent to any of the agencies listed in 40 CFR 124.10(c)(1) (ii) and (iii).
We are not able to judge whether the above differences between the state and federal regulations render the state provisions inequivalent. However, it would appear that any inequivalency identified by EPA could be corrected for the purposes of interim authorization by an agreement between the Department and EPA that state notice procedures would meet the federal requirements.
 H. State statutes and regulations require that the notice be published in major local newspapers and broadcast over local radio stations and be sent to each unit of local government having jurisdiction over the area in which the proposed facility seeks to locate and other state agencies with authority over facility construction or operation. (See Solid Waste Disposal Act Amendments of 1980, P.L. 96-482, Section 26).
Citation of Laws and Regulations
Section 260.395.8; 10 CSR 25-8.010
Explanation of Legal Authority
 10 CSR 25-8.010(1)(E)1 and (G)1 require that the public notice regarding a proposed permit decision and any public hearing be sent to news media in the affected area, broadcast over local radio stations, and published in a newspaper of general circulation serving the area. In addition, the city (if any) and county in which the facility is to be located are to be notified by mail. All record owners of adjacent property, or in the case of a disposal facility all record owners of the property within one mile of the facility boundary, are notified by mail, as required by § 260.395.8. No state agency other than the Department of Natural Resources has any authority over the construction or operation of a hazardous waste facility located in Missouri. Therefore, it is unnecessary to mention notification to any other agency. 10 CSR 25-8.010 meets the requirements of Section 26 of P.L. 96-482.
 I. State statutes and regulations allow any interested person to submit written comments. (See 40 CFR 123.129(d), 123.7 and 124.11).
Citation of Laws and Regulations
 10 CSR 25-8.010
Explanation of Legal Authority
 10 CSR 25-8.010(1)(D) makes it clear that any interested person may submit written comments. Where a public hearing is held, those comments may be submitted up to seven days after the hearing. 10 CSR 25-8.010(1)(G)3.
 J. State statutes and regulations provide for informal public hearings if the state receives written opposition and a request for a hearing within 45 days of publication of the notice. (See Solid Waste Disposal Act Amendments of 1980, P.L. 96-482, Section 26).
Citation of Laws and Regulations
Section 260.395.8; 10 CSR 25-8.010
Explanation of Legal Authority
Section 260.395.8 requires a public hearing to be held, if requested, without regard to opposition to the proposed permit.10 CSR 25-8.010(1)(G) provides that a hearing will be held if requested in writing within 30 days after the public notice is issued. We cannot say whether EPA will view a period of 30 days as substantially equivalent to 45 days.
 K. State statutes and regulations require that such public hearing allow the presentation of written and oral comments and be conducted in a manner substantially equivalent to the requirements of 40 CFR 124.17. (See 40 CFR 123.129(d) and 123.7).
Citation of Laws and Regulations
 10 CSR 25-8.010
Explanation of Legal Authority
 10 CSR 25-8.010(1)(G)4 makes it clear that both written and oral comments may be presented at the hearing. Further,10 CSR 25-8.010(1)(H) provides that at the time of permit issuance the Department must specify changes made from the draft permit, describe and respond to significant comments, and make the response to comments available to the public. Thus, the state regulation conforms to 40 CFR 124.17.
 L. Statutes and regulations require that written responses to significant comments be made available to the public. (See 40 CFR 123.129(d), 123.7 and 124.17).
See the preceding subpart.
CONCLUSION
We have in the preceding memorandum addressed those areas requested of us in the format suggested by EPA. In general, we believe that the state regulations adopted under the Missouri Hazardous Waste Management Law, and fugitive dust regulations adopted by the Missouri Air Conservation Commission, compare favorably with EPA regulations, and can be judged substantially equivalent to the federal regulations. We are unable to judge whether EPA will find any of the relatively few differences between state and federal regulations noted in our memorandum to constitute a lack of substantial equivalency between the state and federal programs as a whole.
Respectfully submitted,
 DAN SUMMERS Assistant Attorney General